17463

Fannye M. WANT, Individually and as Executrix of the Estate of Samuel Want, Deceased, Plaintiff-Respondent, v. ALFRED M. BEST COMPANY, Inc., et al., Defendants-Respondents, and United States of America, Defendant and Intervening Plaintiff-Appellant

(105 S. E. (2d) 678)

464

*Messrs. John N. Stull, Acting Assistant Attorney General, Lee A. Jackson, Chief, Appellate Section,* and *A. F. Prescott* and *John J. McCarthy, Jr., Attorneys, United States Department of Justice,* of Washington, D. C., and *N. Welch Morrisette, Jr., United States Attorney,* of Columbia, and *Thomas P. Simpson, Assistant United States Attorney,* of Charleston,

*Messrs. Royall & Wright,* of Florence, *for Respondents Fannye M. Want, LeRoy M. Want, Mrs. Margaret M. Tew* and *The Citizens and Southern National Bank,* and *James P. Mozingo III,* and *John L. Nettles,* of Darlington, *for Respondents Alma H. Bowie, H. C. Dickey* and *Erminie Dickey,* and *Franklin G. Burroughs,* of Conway, *for Respondent Eula T. Baxter,* and *Joseph L. Nettles,* of Columbia, *for Respondent, R. L. Bryan Co.,* and *Paul A. Sansbury,* of Darlington, *for Respondents, Isabel G. Blake, Sara G. Coffee, Darlington County Bank & Trust Company, Lillian S. McFall, K. C. Nash, Ruth S. Rogers, L. R. Peavey, Weston Roderick, W. L. Smith, individually and as Committee for Aline Smith, Henry M. Smith, Mary Smith Arnold* and *Pauline Flowers as Executrix of Estate of J. C. Flowers,* and *C. E. Gardner,* of Darlington, *for Respondent, P. A. Bethea,* and *Rosen & Rosen,* of Georgetown, *for Respondents, Margaret Gaillard Fritz, Elias Couturier* and *Elizabeth A. Gaillard, individually and as Executrix of Estate of Margaret C. Gaillard and as Agent for Elias Couturier,* and *McEachin, Townsend & Zeigler,* of Florence, *for Respondents, Montague McMillan, John Monroe J. Holliday* and *Joseph W.*

Holliday, as Executors of Estate of Ruby E. Holliday, and as substitute Executors of Estate of Mollie H. Johnson; Montague McMillan and Kathleen McMillan Waddington, and Robert L. Kilgo, of Darlington, for Respondents, Ola Mae Kilgo and Mae E. Kilgo, and Willcox, Hardee, Houck & Palmer, of Florence, for Respondent, Stephenson Finance Company, Inc., and Jerome F. Pate, of Darlington, for Respondents, Jessie S. Farrow, Louise McMillan and Marion McMillan, and Robert W. Shand, of Hartsville, for Respondent, Mary P. Genet, and Paulling & James, of Darlington, for Respondents, Marie K. Haynsworth, Norman Martin, Jr., Lurline W. McCullough, L. H. Sompayrac, Olive S. Thompson, Mae Welling and Martha W. Twitty, and William H. Blackwell, of Florence, for Respondents, Louise L. Bess and Bernard B. Bess, and John P. Gardner, of Darlington, for Respondent, Cornelia W. McLeod,

October 13, 1958.

LEGGE, Justice.

The United States, originally a defendant and later intervening plaintiff in this action to settle the insolvent estate of the late Samuel Want, appeals from a circuit decree which, affirming a special referee's first report,

(1) adjudged barred certain claims based upon alleged transferee and fiduciary liability of Samuel Want for estate and gift taxes due by the estate of his brother, Jacob A. Want, of which Samuel had been co-executor;

(2) disallowed certain of its claims based upon alleged transferee and fiduciary liabiliity of Samuel Want for income taxes due by the estate of his said brother;

(3) approved certain disbursements made by Samuel Want as co-executor of his said brother's estate; and

(4) rejected its claim of priority over certain other creditors of Samuel Want's estate.

Samuel Want, a prominent lawyer of Darlington, South Carolina, died testate on December 9, 1953. His widow, Fannye M. Want, qualified as executrix and duly published the required notice to creditors. On January 3, 1955, more than eleven months having elapsed since completion of such publication, she instituted this action, joining as defendants all persons who had filed claims against the estate. In her complaint she alleged:

(1) That pursuant to an order of the Probate Court for Darlington County she had had an audit of her decedent's affairs made by a firm of certified public accountants, and their audit had been filed in said court.

(2) That the assets of the estate had been inventoried and appraised, and the inventory and appraisement had been filed in the said Probate Court.

(3) That the Probate Court had not undertaken to settle the affairs of the said estate, or to pass upon the validity of claims filed against it; and that the interests of all concerned would be best served if the Court of Common Pleas would accept jurisdiction, pass upon all claims, and settle the estate.

(4) That she had received, and was chargeable with, funds collected for the estate (which she itemized) aggregating $90,176.33, from which she had made expenditures (also itemized) amounting to $18,848.12, leaving a balance of $71,328.21, including an item of $3,080.08 which Darlington County Bank & Trust Co. had, without authority from the plaintiff or from the Probate Court, withdrawn from the account of Samuel Want in said bank after his death and placed in an escrow account, the bank claiming this fund as beneficiary of a constructive trust.

(5) That all of the personal assets of the estate had been liquidated except:

(a) Three notes and mortgages, appraised at $7,459.44;

(b) Unpaid balances due the estate from sales of parts of decedent's law library and office furniture, aggregating $1,494.20;

(c) Fees, some contingent, and all of doubtful collectibility, due decedent for legal services;

(d) A disputed claim, appraised at $2,531.98, secured by assignments (only one of which was in writing) of policies of insurance on the life of one Sam J. Woodward;

(e) A deposit of $100.00 in First Federal Savings & Loan Association, Darlington; and

(f) $43 due from purchaser of one share of stock of Darlington Theaters, Inc.

(6) That the following claims had been filed against the estate:

(a) Open accounts (6) .................$    278.13

(b) For return of fees allegedly unearned (3)     616.66

(c) By persons claiming as beneficiaries of constructive trusts in decedent's bank account (5) .......................    11,622.64

(d) By persons claiming property as benefici-
aries of trusts *ex maleficio* (52) ...... 301,823.93
(e) Claim as debt due United States ...... 5,000.00
(f) Funeral expenses ................... 1,030.00

$320,371.36

(7) That the audit of decedent's affairs showed that at the time of his death he had on hand funds belonging to L. H. Sompayrac (a defendant) amounting to $1,243.66, for which the said Sompayrac had not yet filed, but had informed the plaintiff that he would file, a claim.

(8) That defendant's son, LeRoy M. Want, had voluntarily paid some small open accounts due by the estate, aggregating $562.96, and also salaries of decedent's employees from December 1 through December 9, 1953, amounting to $247.59.

(9) That certain stock certificates, registered in the name of Samuel Want, had been pledged by him as security to his note given to South Carolina National Bank, on which there was, at the time of his death, an unpaid balance of $9,090.00. That the plaintiff, under authority of an order of the Probate Court, had paid this obligation and recovered said securities, the value of which far exceeded the debt. That thereafter, in the course of the audit of decedent's affairs, it had been found that his records indicated that he had held these stocks in trust for the defendant Marie K. Haynsworth. That since decedent's death the plaintiff had received dividends on these stocks to the amount of $1,132.75, which sum she was holding in a special account in Darlington County Bank & Trust Co. That the said Marie K. Haynsworth, asserting a constructive trust in said stocks, had filed a claim against the estate, demanding delivery of the stocks and payment to her of the dividends received thereon since decedent's death.

(10) That from the audit of decedent's affairs it appeared also that certain certificates of stock registered in his name had been held by him in trust for the defendant Lurline W. McCullough, who has made claim for them and for the

dividends collected by the plaintiff thereon, amounting to $55.10 which have been deposited in a special account in Darlington County Bank & Trust Co.

(11) That the personal assets of the estate being insufficient to pay debts and expenses of administration, resort must be had to decedent's real estate, consisting of two parcels in the city of Darlington; and that the same should be sold under the direction of the court and the proceeds, after provision for dower and homestead, applied to the payment of the debts of the estate. Plaintiff also claimed homestead for herself and her son in the personal assets of the estate.

(12) That should the Darlington County Bank & Trust Co. fail to establish, in this action, its claimed right to the sum of $3,080.08 withdrawn by it as before mentioned from the account of Samuel Want, it should be required to account for it to his estate.

Prayer was:

(1) For admeasurement and allotment of dower and homestead;

(2) That the defendants be required in this cause to prove their claims against the estate;

(3) That the court fix the amount of commissions to be allowed plaintiff as executrix, and a reasonable fee for the estate's attorneys; and

(4) For approval of plaintiff's accounting to date and, upon complete liquidation of the assets of the estate, approval of her accounting then to be made, and for directions as to the distribution to the creditors.

Of the answers of the several defendants claiming as beneficiaries of trusts *ex maleficio,* the transcript of record reproduces three as typical, *viz.*:

*Lurline W. McCullough:* That she placed in the hands of Samuel Want $24,349.05, in trust to be invested by him for her; that there were withdrawals from and charges against said sum aggregating $12,484.52, leaving a balance of $11,-

864.53 held in trust by Samuel Want for this defendant; that he did not invest the said sum for her, but without her knowledge or consent misappropriated the same to his own use and thereby established a constructive trust *ex maleficio,* under which she is entitled to, and has filed, a claim against his estate in the amount of $11,864.53, with interest. Further, that with funds placed by her in his hands for investment, he purchased 20 shares of the capital stock of Technicolor, Inc., and 3 shares of the capital stock of Armstrong Cork Co., certificates for which were issued in his name and by him endorsed in blank for transfer; that dividends thereon were paid to her until his death; that she is the sole owner of said certificates and is entitled to their possession and to dividends received thereon since the death of the said Samuel Want; and that she has filed claim therefor.

*Marion McMillan:* That she deposited with Samuel Want for the purpose of investment for her in sound securities $684.32; that he used said funds for other purposes without her consent; and that she is thereby entitled to, and has filed, as beneficiary of a trust *ex maleficio,* a prior and preferred claim against his estate in the amount of $684.32.

*J. C. Flowers:* That Samuel Want collected for this defendant, on a mortgage obligation, $337.52; that the said Samuel Want did not remit the amount so collected, but placed the same in his own account; and that therefore "a lien is impressed upon all of the assets of the late Samuel Want for the payment of this indebtedness, regardless of the source of said assets, and that this defendant, is, therefore, entitled to a priority over all other creditors of said estate for the amount of his debt."

The United States having claimed that the estate of Samuel Want was indebted to it by reason of the decedent's liability for certain income, estate, and gift taxes, but having filed no claim in this action with regard thereto, on or about May 8, 1956, upon application of the plaintiff, with the consent of the answering defendants, but without notice to the United States, the circuit judge issued an order per-

mitting amendment of the summons and complaint by joinder of the United States as a party defendant, and requiring it to prove in this action any claims that it might have against the estate of Samuel Want. On July 9, 1956, the United States demurred to the amended complaint upon the ground that the court was without jurisdiction to bring it into the cause except with its consent, which had not been alleged. On July 21, 1956, after hearing, an order was issued overruling the demurrer and barring any claims that the United States might have against the estate of Samuel Want unless it should assert them in this cause on or before August 20, 1956. The United States filed notice of intention to appeal from said order, but that appeal appears to have been abandoned (or, as the agreed statement puts it, "dismissed") on August 31, 1956.

On or about August 31, 1956, the United States filed an intervening complaint, in which it set forth two causes of action. The first was, in substance, as follows:

That Samuel Want, as co-executor of the estate of Jacob A. Want (who had died insolvent in New York on February 7, 1947), had converted various assets of said estate, which had been in the possession of Jacob A. Want at the time of his death, and had applied these assets toward satisfaction of debts other than those due the United States; and that Samuel Want had thereby become personally liable to the United States, both as transferee and by virtue of Section 3467 of the Revised Statutes (31 U. S. C. A. § 192), for the following assessments against Jacob A. Want for income taxes for the years 1943, 1944 and 1945, and interest and penalties thereon:

| Year | Deficiency Assessment | Interest | Penalty |
|------|------------|----------|---------|
| 1943 | $15,988.54 | $5,189.92 | $ 8,210.11 |
| 1944 | 30,488.91 | 8,067.45 | 15,244.46 |
| 1945 | 35,169.44 | 7,195.76 | 17,584.72 |

And that, Samuel Want having died insolvent, the government's claim based upon his personal liability for said in-

come taxes and interest and penalties thereon has priority, by virtue of Section 3466 of the Revised Statutes (31 U. S. C. A. § 191), over all other claims against his estate.

Paragraph VIII of the first cause of action in the intervening complaint, as it appears in the transcript, has nothing to do with the government's claim against the estate of Samuel Want arising out of the decedent's alleged personal liability for the additional income taxes, interest and penalties assessed against Jacob A. Want. In that paragraph it is alleged that there are pending in the Tax Court of the United States, on petitions filed by Estelle Want and Samuel Want, proceedings concerning alleged estate and gift tax liabilities of Samuel Want that arose by virtue of his position as co-trustee of a trust established by Jacob A. Want for Jacqueline Want, and by virtue of his position as co-executor of the estate of Jacob A. Want; that in those proceedings Fannye M. Want, as executrix of the estate of Samuel Want, has been substituted in the place of said decedent; and that under the provisions of Section 6213 of the Internal Revenue Code of 1954, 26 U. S. C. A. § 6213, the United States is prohibited from asserting these claims in the present action until their final determination by the Tax Court.

The second cause of action in the intervening complaint has not been reproduced in the transcript of record, but it is referred to in the Special Referee's First Report as follows:

"In its second cause of action in the intervening complaint, United States seeks to collect its income tax claim out of certain insurance Samuel Want is alleged to have left on his death to certain named beneficiaries. The government's claim, however, is contested. The other creditors do not seek to make any claim against the insurance proceeds, but contend that if any of the proceeds of the life insurance referred to in the second cause of action in the intervening complaint on behalf of the United States, or the proceeds of any other life insurance on the life of Samuel Want, be held subject to the claims proved against the estate of Samuel Want,

then such proceeds would become assets of the estate of Samuel Want and not subject alone to the payment of the taxes and interest allegedly due to the defendant United States of America. The attorneys for the estate of Samuel Want and the insurance beneficiaries entered into a stipulation with the United States that the beneficiaries paid no consideration for the insurance; that Samuel Want retained until his death the right to change his beneficiaries with respect to the policies against which the government attempts to assert its claim; that the cash surrender value of the policies in question on the date of Samuel Want's death was the sum of $15,737.86; and that Samuel Want died insolvent. No admission was made and no proof was offered as to the possible insolvency of Samuel Want at any time prior to the date of his death."

As reproduced in the transcript, the answer of the plaintiff and the third party defendants to the first cause of action of the intervening complaint consisted of:

1. Admission of the factual allegations of Paragraph VIII;

2. Denial that the United States is precluded, by the proceedings pending in the Tax Court, from asserting in the present cause the claims referred to in Paragraph VIII;

3. Denial of the remaining allegations of the said first cause of action; and

4. Plea of the statute of limitations in bar of the alleged transferee liability of the estate.

If answer was made to the second cause of action of the intervening complaint, its substance does not appear in the transcript.

Issue having been thus joined, the cause was referred to the Honorable Henry E. Davis, as Sepecial Referee, to take testimony and report the same to the court, together with his conclusions and recommendations on both the law and the facts and with leave to report any special matter.

Two references have been held, the first on October 1, 1956, and the second on October 30, 1956. At the reference

on October 1 it was decided that at the second reference the Special Master would receive testimony on all claims against the estate, and, at the conclusion thereof, hear arguments as to the establishment of claims and as to their respective priorities, after which he would file a First Report thereon, leaving all other matters open for later determination. It was also determined that the matters set forth in paragraphs 13, 14 and 15 of the amended complaint, *i. e.,* the claim of Marie K. Haynsworth to certain stocks and dividends, and the similar claim of Lurline W. McCullough to certain other stocks and dividends, would not be taken up at the second reference, but would be considered later and disposed of in the Special Master's final report. In connection with the motion to proceed in the manner just stated, the United States took the position that it could not be required to present in this action its claims against the estate of Samuel Want pending in the Tax Court, and that it would therefore be improper for the Special Referee to make any determination at that time (*i. e.,* after the second reference) as to the establishment of claims against the estate and as to their respective priorities.

On November 12, 1956, the Special Referee filed his First Report, in which, after full review of the facts and the law, he found and recommended as follows:

*As To Claims Against Bank Accounts In Name Of Samuel Want, Attorney, In Peoples Bank of Hartsville And In Darlington County Bank & Trust Company.*

1. That Ola Mae Kilgo, for whom Mr. Want had been making monthly collections of $46.97 on a mortgage obligation payable to her, had traced into his account in Peoples Bank of Hartsville five of said monthly collections, aggregating $234.85; and that she was therefore entitled to payment in full, out of that account, of her claim against the estate in that amount.

2. That the balance on deposit in Darlington County Bank & Trust Co. in the name of Samuel Want, Attorney, at the

time of his death on December 9, 1953 which at that time was $9,823.81 and had not since December 3, 1953, been below that figure, was in fact the property of the following parties, who had traced into this account funds that decedent had received in trust for them and deposited in said account on and after December 3, 1953; and that said balance should therefore be paid to them as follows:

(a) $4,000.00 to H. C. and Erminie Dickey, who had on December 7, 1953, paid to Mr. Want $4,000.00 in cash in trust for the purpose of paying for them a mortgage obligation to Peoples Bank of Hartsville;

(b) $2,476.59 to Darlington County Bank & Trust Co. (of which Mr. Want had been president), being that part of its claim of $3,080.08 identifiable as included in the deposit balance before mentioned. The claim in the amount of $3,080.08 was founded upon an agreement between decedent and one T. J. Sansbury whereby a check payable to Sansbury in the amount of $3,180.08 had been delivered by Sansbury to Want in trust to disburse the proceeds as follows: $100.00 to Sansbury, and $3,080.08 toward payment of sansbury's obligations at Darlington County Bank & Trust Co. The check for $3,180.08 had been deposited by Want in his account before mentioned on December 3, 1953, along with another check for $4,547.85, representing the proceeds of a collection made by Want for Mrs. Mollie H. Johnson (see sub-paragraph c immediately following). The remainder of the bank's claim of $3,080.08, towit: $603.49, was accorded priority in the distribution of assets, as an unremitted collection.

(c) $3,347.22 to the Estate of Mollie H. Johnson, being that part of the claim of her estate for $4,162.85 identifiable as included in the deposit balance before mentioned. This claim was based upon a collection made by Mr. Want for Mrs. Mollie H. Johnson in the amount of $4,547.85, which he had deposited in the account before mentioned on December 3, 1953, along with the Sansbury check referred to in (b) above. It appeared that Mr. Want had previously ad-

vanced to Mrs. Johnson $385, so that she was entitled to only $4,162.85 of the collection of $4,547.85. The difference, $815.63, between the claim of $4,162.85 and the payment of $3,347.22 from this account was accorded priority in the distribution of assets, as an unremitted collection.

It will be noted that the Special Referee, in disposing of the deposit balance of $9,823.81 before mentioned, applied the rule in *Clayton's case* (1816), 1 Meriv. 572, 35 Eng. Reprint 781, 15 Revised Rep. 161, 3 Eng. Rul. Cas. 329, that where a trustee has commingled the funds of several trusts into one fund and has improperly depleted that fund so that the balance remaining is insufficient to satisfy all of the trusts, the claims of the cestuis are entitled to payment in order inverse to that in which their moneys went into the fund. The correctness of this holding is not in issue here.

### As To Funeral And Administrative Expenses

That all reasonable funeral expenses and expenses of administration, including attorney's fees and commissions, should be paid before any other claims. The claim of Kistler Funeral Home, $1,030.00, for funeral expenses, (on which the executrix had paid $530.00 on her own account) was approved. The matters of commissions to be allowed the executrix, and of fees for her counsel, were reserved for later determination.

### As To Claims Based Upon Trusts Ex Maleficio

In this category the Special Referee placed the following:

1. 17 claims (including the balance, $603.49, of the claim of Darlington County Bank & Trust Co. before mentioned, and the balance, $815.63, of the claim of Estate of Mollie H. Johnson before mentioned) totalling $142,995.03, based upon collections made by Mr. Want for the respective claimants, but not remitted to them.

2. Claim of R. L. Bryan Company, $485.30, for printing transcript of record on appeal to this court in the case of *Munn v. Asseff*. Mr. Want, who represented the appellant

in that case, had received from his client $485.30 to pay the cost of this printing, but he had not paid the printer.

3. Claim of Norman Martin, Jr., $144,86. This claimant was one of several owners of a tract of land which had been sold for $7,000.00. Mr. Want, representing the sellers, had received the purchase price, but had not remitted the claimant's share, $144.86.

4. Claim of K. C. Nash, for $530.00 that he had deposited with Mr. Want for the purpose of paying the cost of printing on appeal to this court in the case of *Gardner v. Nash,* but that had not been used for that purpose.

5. Claim of Elizabeth A. Gaillard, as executrix of the estate of Margaret C. Gaillard, $1,250.28. This money had been left with Mr. Want by the executrix for safekeeping and distribution to the beneficiaries upon the closing of the estate; but it had not been so disbursed.

6. Claim of Weston Rodrick, $500. The claimant had placed this money in Mr. Want's hands to be used for payment on a proposed compromise settlement of an action brought by the United States against Roderick in the District Court; but it had not been so used, nor had it been returned to Roderick.

7. 17 claims, totalling $161,055.12, for moneys left with Mr. Want by the several claimants, under various circumstances, to be invested for them. These funds were not used by Mr. Want for the purposes for which they had been entrusted to him. The Special Referee found, as a matter of fact, "that these funds were commingled by the late Samuel Want with his personal funds, and that for many years the late Samuel Want used these commingled funds for the payment of his debts and for the purchase of property and securities". It does not appear from the record before us that any of these claimants was able to trace the money so left by him or her with Mr. Want into any specific fund, bank account, security or other property in the name or under the control of Mr. Want at the time of his death.

All of the aforementioned claims denominated as claims based upon trusts *ex maleficio,* totalling $306,960.59, were awarded priority over all other claims except:

1. That of Kilgo, $234.85, traced into the account in Peoples Bank of Hartsville in the name of Samuel Want, Attorney;

2. Those of Dickey, Darlington County Bank & Trust Co., and Estate of Johnson, aggregating $9,823.81 and identified collectively with the balance in that amount to the credit of Samuel Want, Attorney, in Darlington County Bank & Trust Co.;

3. Funeral expenses and expenses of administration, including commissions to the executrix and fees to her counsel; and

4. Dower and homestead.

### As To The Claims Of The United States

1. That the bar order of July 21, 1956, appeal from which had not been perfected, is the law of the case.

2. That the United States, being bound by the order of July 21, 1956, and having accepted the jurisdiction of the Court of Common Pleas for Darlington County by filing its intervening complaint, should have proved in this cause all of its claims against the estate of Samuel Want, including the claims pending in the Tax Court for estate and gift tax liabilities arising out of the decedent's co-trusteeship under the trust established by Jacob A. Want for Jacqueline Want and out of decedent's co-executorship of the estate of Jacob A. Want; and that all of its claims not so proved and allowed in this cause should be barred from participating in the distribution of assets of the estate of Samuel Want until after payment in full of the claims approved and recommended for allowance.

3. That the United States was not precluded by Section 6213 of the Internal Revenue Code of 1954 from presenting in this cause its estate and gift tax claims before mentioned.

4. That the claim of the United States under the second cause of action of the intervening complaint should be disallowed, there being no evidence that Mr. Want was insolvent when he took out his insurance or when he paid the premiums thereon.

5. That the claim of the United States against the estate of Samueal Want based upon alleged transferee liability of Samuel Want as co-executor of the estate of Jacob A. Want, for income tax liability of $143,139.31 due from Jacob A. Want, should be allowed in the amount of $1,147.08, and was entitled to priority of payment out of the assets of the estate of Samuel Want; but that the funds and property now in the hands of the executrix are not, and will not be, assets of the estate of Samuel Want until the approved claims of all beneficiaries of *ex maleficio* trusts shall have been paid in full.

To this report the United States excepted, and so did the defendant Martha W. Twitty; and the cause was thereupon heard before the Honorable J. Woodrow Lewis, Judge of the Fourth Judicial Circuit. By his decree dated December 3, 1956, he:

1. Tentatively approved the Special Referee's recommendation that the claim of Martha W. Twitty be allowed in the amount of $1,874.00 instead of $2,030.00 which she had claimed; and directed the Special Referee to take further testimony concerning her exceptions, and report later thereon;

2. Dismissed the second cause of action of the intervening complaint;

3. Overruled the exceptions of the United States to the Special Referee's First Report;

4. Ordered that all claims against the estate of Samuel Want not proved and allowed in said decree be barred from participating in the funds of said estate until after payment in full of the claims so approved and allowed; and

5. In all other respects confirmed the Special Referee's findings of fact and conclusions, except for a slight change

in the order of distribution, the decree directing that the executrix distribute the funds in her hands, and all funds that might later come into her hands, in the following order:

a. The Kilgo claim, $234.85;

b. The Dickey claim, $4,000.00;

c. The claim of Darlington County Bank & Trust Co., to the amount of $2,476.59;

d. The claim of Estate of Mollie H. Johnson, to the amount of $3,347.22;

e. All reasonable expenses of administration, including attorney's fees and commissions to the executrix;

f. Dower and homestead rights as they may be determined;

g. Balance of funeral expenses, $500.00;

h. The claims of persons designated in the Special Referee's report as beneficiaries of trusts *ex maleficio,* the same to be paid ratably if funds be insufficient to pay them all in full;

i. The claim of the United States, to the amount of $1,147.08.

The United States, appealing from that decree:

(1) Challenges the court's jurisdiction to bar its claims against the estate of Samuel Want not asserted in this action; specifically, its claims pending before the Tax Court;

(2) Contends that a certain letter, dated December 26, 1953, written by Estelle Want, co-executrix of the estate of Jacob A. Want, to the late Samuel Want's son, Mr. LeRoy M. Want, should have been admitted in evidence;

(3) Contends that the estate of Samuel Want is chargeable with an item of $10,016.09, represented by a check drawn on the personal account of Samuel Want and deposited on August 5, 1950, to the credit of Estate of Jacob A. Want, in Darlington County Bank & Trust Co.;

(4) Charges that the lower court erred in approving, as reasonable expenses of administration of the estate of Jacob

A. Want, certain disbursements made by Samuel Want as co-executor of said estate; and

(5) Charges that the lower court erred in according priority, over its claims, to those of creditors referred to in the Special Referee's report and in the decree as beneficiaries of trusts *ex maleficio*.

We shall discuss these contentions in the order stated above.

The government bases its jurisdictional challenge upon the following propositions:

a. That by the bar order of July 21, 1956, the court purported, in derogation of appellant's sovereign immunity from suit, to force it into the present action without its consent;

b. That its failure to appeal from said order does not preclude it from now questioning the jurisdiction;

c. That by filing its intervening complaint it submitted to the jurisdiction only to the extent of its claims therein asserted, and not as to those pending before the Tax Court; and

d. That by Section 6213 of the Internal Revenue Code of 1954 it was and is prohibited from asserting in this cause its claims pending before the Tax Court until their final determination by that court.

The order of July 21, 1956, did not purport to force the government to submit to suit as a defendant. It decreed that the government's claims be presented and proven in the forum having control, and charged with the orderly administration and distribution, of the assets of the estate, or else be barred from participating in such distribution until after payment of claims proven in the cause. Such an order does not violate the sovereign's immunity from suit. *United States v. Bank of New York & Trust Co.,* 296 U. S. 463, 56 S. Ct. 343, 80 L. Ed. 331. See also *John A. Johnson & Sons, Inc., v. National City Bank of New York,* Sup., 129 N. Y. S. (2d) 86.

■ The circuit court having jurisdiction, as before stated, to issue its order of July 21, 1956, and the government's appeal from it having been dismissed, that order became the law of the case. *Bank For Savings and Trusts v. Towe,* 231 S. C. 268, 98 S. E. (2d) 539. Accordingly, if the government wished to assert in the cause any claims against the estate of Samuel Want, it was bound by the terms of that order to assert all of them, either by intervening complaint or otherwise, within the time limited by the order.

■ We do not agree with appellant's contention that it was and is prohibited by Section 6213(a) of the Internal Revenue Code of 1954 from asserting in this cause its claims pending before the Tax Court. The proceeding there was instituted by petition of Samuel Want and Estelle Want, individually and as co-executors of the estate of Jacob A. Want and as co-trustees of a trust established by Jacob A. Want for Jacqueline Want, seeking redetermination of proposed estate and gift tax deficiency assessments against the estate of Jacob A. Want and against Samuel Want as transferee, trustee and fiduciary. Section 6213(a), which permits a taxpayer to thus petition for redetermination of a proposed deficiency assessment within ninety days after notice from the Secretary or his delegate of his determination of such deficiency, further provides that "no assessment of a deficiency  *  *  *  and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until  *  *  *  the expiration of such 90-day  *  *  *  period  *  *  *  nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final."

Subsection (d) of Section 6213 reads as follows: "The taxpayer shall at any time (whether or not a notice of deficiency has been issued) have the right, by a signed notice in writing filed with the Secretary or his delegate, to waive the restrictions provided in subsection (a) on the assessment and collection of the whole or any part of the deficiency."

· The restrictions imposed by Sub-section (a) are for ██ the protection of the taxpayer, who alone may waive them. Subsection (d) provides a method by which he may evidence such waiver; but its language neither expressly nor by necessary implication limits him to that method. When the executrix of the estate of Samuel Want, who had been substituted in the Tax Court proceeding in the place of her decedent, sought and obtained the order of May 8, and later the order of July 21, 1956, bringing the United States into the present action and requiring it to prove therein all of its claims against his insolvent estate, she thereby waived whatever right she may have had to insist upon the Tax Court's determination of his liability with respect to the proposed deficiency assessments for estate and gift taxes.

Appellant's contention that Section 6213(a) forbids its assertion of these claims here must be rejected for another reason. Section 6871, 26 U. S. C. A. § 6871, provides that "upon the adjudication of bankruptcy of any taxpayer in any liquidating proceeding, the approval of a petition of, or against, any taxpayer in any other bankruptcy proceeding, or the appointment of a receiver for any taxpayer in any receivership proceeding before any court of the United States or of any State", any income, estate or gift tax deficiency not theretofore assessed in accordance with law shall be immediately assessed despite the restrictions imposed by Section 6213(a); and that claims for such deficiency "may be presented, for adjudication in accordance with law, to the court before which the bankruptcy or receivership proceeding is pending, despite the pendency of proceedings for the redetermination of the deficiency in pursuance of a petition to the Tax Court * * *."

The obvious purpose of Section 6871 is to enable the ██ United States, in the event of the insolvency or receivership of a taxpayer during the pendency in the Tax Court of proceedings for redetermination of a deficiency assessment, to file its claim forthwith in the bankruptcy or receivership proceeding and thus protect it against loss that

might result if the assets of the insolvent should be distributed among his other creditors before the final decision of the Tax Court. The term "receivership" as there used, liberally construed in order to effectuate the legislative intent, is, in our opinion, broad enough to encompass a proceeding which, though not so denominated, has the essential character of a receivership. We think that the case at bar, involving the liquidation and distribution of the assets of an insolvent taxpayer under the direction of the court and by a court appointed officer, is within the purview of the section.

Analogous is *Pink v. Commissioner of Internal Revenue,* 38 B. T. A. 182, where it was held that the Superintendent of Insurance of the State of New York, who had applied for and obtained from the Supreme Court of New York an order to act as liquidator of an insurance company, was in effect a receiver under the supervision of the state court within the meaning of Section 274 of the Revenue Act of 1936 (now Section 6871 of the Internal Revenue Code). See also: *Jacoby v. Bond & Mortgage Guarantee Co.,* 2 Cir., 72 F. (2d) 420; and *Tolfree v. New York Title & Mortgage Co.,* 2 Cir., 72 F. (2d) 702. Of like reasoning is *Banco di Napoli Agency in New York v. Commissioner of Internal Revenue,* 1 T. C. 8, holding that possession of the business and property of a bank by the Superintendent of Banks of the State of New York is the equivalent of a receivership proceeding before a state court within the meaning of that section. See also *Clifton City Bank v. Commissioner of Internal Revenue,* 1927, 6 B. T. A. 643.

It is our opinion that Sections 6213(a) and 6871, fairly construed together, opposed no bar to the assertion in this cause of the government's estate and gift tax claims; and that certainly no such bar could have been pleaded by the executrix, who had sought to have them asserted here.

Apart from these considerations, the propriety of asserting those claims in the circuit court is emphasized by the very nature of the present action. Unlike

the proceeding before the Tax Court, it is *in rem;* it has for its subject-matter the assets of the insolvent estate, and it is concerned with their liquidation and disposition. Having taken that subject-matter into its control, the court of common pleas may retain such control, exclusively, until its duty has been fully performed. Assertion of the estate and gift tax claims in this action would have furthered the effective and orderly exercise by the state court of the jurisdiction exclusively vested in it, and would have accorded with that spirit of cooperation between the independent tribunals. of the states and of the United States essential to the harmonious functioning of our dual judicial system. Cf. *Princess Lida of Thurn and Taxis v. Thompson,* 305 U. S. 456, 59 S. Ct. 275, 83 L. Ed. 285; *United States v. Bank of New York & Trust Co., supra; Marchant v. Wannamaker,* 176 S. C. 369, 180 S. E. 350; *Sparrow v. Nerzig,* 228 S. C. 277, 89 S. E. (2d) 718, 56 A. L. R. (2d) 328; *In re Craig's Estate,* 1954, 379 Pa. 157, 109 A. (2d) 190.

It is not disputed: that Jacob A. Want died on February 8, 1947; that his estate, of which Samuel Want was executor and Estelle Want was and is executrix, is insolvent; that Jacob A. Want was indebted to the United States for income taxes (deficiency) for the years 1943, 1944 and 1945, aggregating $81,646.89; that assessment for these taxes, plus penalties amounting to $41,039.29 and interest to August 12, 1949 amounting to $20,453.12 (a total of $143,139.31) was duly made; that no part of this tax liability has been paid; and that Samuel Want became personally liable, and his estate is therefore liable, for this debt to the extent of the assets of the estate of Jacob A. Want that came into his hands as co-executor, less the reasonable expenses of administration of that estate. The priority of such claim against the estate of Samuel Want is conceded, U. S. C. A. Title 31, §§ 191, 192.

The controversy to which we now turn centers upon the Special Referee's findings, concurred in by the Circuit Judge, as to: (a) the amount of assets of the estate of Jacob A.

Want shown by the government to have been received by Samuel Want as co-executor; and (b) the amounts shown by the executrix of the estate of Samuel Want as having been disbursed by him (he appears to have been the active executor) for reasonable expenses of administration of Jacob's estate.

Admittedly received by Samuel Want as co-executor of the estate of Jacob A. Want were the following:

(a) Assets shown on the estate tax return for
    said estate:

| | |
|---|---|
| Series E, U. S. Savings Bonds........$ | 1,440.00 |
| Cash on deposit in Colonial Trust Co... | 22,554.34 |
| 1942 Chrysler automobile ........... | 1,100.00 |
| Furniture on storage .............. | 250.00 |
| | $ 25,344.34 |

(b) Received from estate of Louise Andre
    Romeas ........................   1,000.00

$ 26,344.34

Two other items of receipt contended for by the government, but disallowed by the lower court, were:

1. An item of $37,800.00 referred to in a letter from Estelle Want to LeRoy M. Want dated December 26, 1953 (Gov't's Exhibit No. 17); and

2. A deposit of $10,016.69 made by Samuel Want on August 5, 1950, to the credit of the account of Estate of J. A. Want in Darlington County Bank & Trust Co. (Gov't's Exhibit No. 16).

The only evidence offered in support of the claimed receipt of $37,800.00 was the letter before mentioned, the pertinent portion of which was as follows:

"Confidential. To be placed in your own personal papers.

"In an inventory you take of the monies from the J. A. Want Corporation and J. A. W. personally, two weeks be-

fore Jake died he had $37,800.00 in cash in a home safe which Sam took down to Darlington with him in a brief case and of which I doubt very much if any record has been made."

Objection to this exhibit as hearsay was properly sustained. It is not suggested that Estelle Want is dead or otherwise unavailable as a witness.

Appellant urges, however, that the exhibit was competent as a vicarious admission because of Estelle Want's privity with Samuel Want as co-executor of Jacob A. Want's estate. The theory on which this contention is founded is that if there is such privity between the absent declarant and a party to the cause that the latter's substantive rights or obligations may be affected by the acts of the former, then admissions by the absent declarant should be competent evidence against the party. IV Wigmore on Evidence, 3d Ed., Sections 1069, 1076. We need explore that theory, in its relation to the case in hand, no further than to say that in our judgment the competency of such vicarious admissions should be tested by the fundamental rule that requires the evidence offered to be the best available proof of the fact sought to be established. The exhibit in question fails to meet that test.

In support of its contention appellant cites *Fisher's Executors v. Tucker's Representatives,* 1826, 1 McCord, Eq. (6 S. C. Eq.) 169, and *Costelo v. Cave,* 1835, 2 Hill's Law (20 S. C. L.) 528. But those cases differ from the one before us in many respects—among them the fact that in neither of them was the person who made the admission living at the time such evidence was offered. The *Fisher case* was concerned with a bond given by the survivor of two partners, in behalf of the partnership, for its debt. The surviving partner had died prior to the commencement of the action. The bond was held competent as an admission sufficient to toll the statute of limitation, but not evidence in itself sufficient to establish the existence of the debt. In the *Costelo case* the action was on a written agree-

ment, between plaintiff's intestate, of the one part, and the defendants and another, since deceased, of the other part. Admissions made by the deceased party, to the effect that plaintiff's intestate had performed his part of the agreement, were held competent.

Assuming the competency of the exhibit, its probative value was for determination by the Special Referee. As he pointed out in his report, the transaction to which it referred was stated to have occurred two weeks before the death of Jacob A. Want; the exhibit does not indicate how much of the $37,800.00 was money of the J. A. Want Corporation and how much was money belonging to Jacob A. Want; it is not supported by any evidence tending to show that any part of the sum referred to was in Samuel Want's possession at the time of Jacob's death. We agree with the lower court that this exhibit was insufficient to establish the fact sought to be proven by it, viz.: that Samuel Want as co-executor had received this item of $37,800.00 among the assets of Jacob's estate.

As to the item of $10,016.69 deposited by Samuel Want on August 5, 1950, to the credit of the account of Estate of J. A. Want in Darlington County Bank & Trust Co., appellant's exception must be sustained. The check so deposited was drawn on the account of Samuel Want, Attorney, in Darlington County Bank & Trust Co.; was made payable to "Estate of J. A. Want, Deceased"; was dated August 5, 1950; and on the same day, having been endorsed by Samuel Want, Attorney, "for deposit, Estate J. A. Want, deceased", was deposited to the credit of that estate. There is no extrinsic evidence bearing upon the reason for the deposit, nor is there anything in the record to negative the inference, necessarily evident from the deposit by Mr. Want into the account of his brother's estate, that this was an asset of that estate. The lower court's contrary conclusion, which the Special Referee's report shows to have been rested solely upon the fact that the check had been drawn on the bank account of Samuel

Want, Attorney, was, we think, without reasonable support in the evidence; and it is therefore reversed.

We turn now to Exception 8, which challenges, as excessive, certain disbursements allowed by the lower court, as expenses of administration of the estate of Jacob A. Want. But first we note, in passing, that the following disbursements out of the funds of that estate were allowed, and are not questioned here:

| | |
|---|---:|
| Payments to Director of Internal Revenue for J. A. Want ....................$ | 8,453.51 |
| Payments for services of accountants and attorneys ......................... | 6,972.80 |
| | $ 15,426.31 |

By Exception 8 appellant questions the allowance of the following disbursements:

| | |
|---|---:|
| (a) For court costs and expenses accountants and attorneys, including the expense of one trip to New York...... | 1,401.93 |
| (b) Travel and hotel expenses of Samuel Want (18 trips to New York and Washington, D. C.) .............. | 4,500.00 |
| (c) Telephone calls and telegrams ...... | 361.63 |
| | $ 6,263.56 |

Item (a) is broken down as follows:

| | |
|---|---:|
| Surrogate of Morris County, N. J., costs..$ | 13.25 |
| Official reporters of Surrogate's Court, for copies of minutes of 8 hearings ...... | 528.25 |
| Disbursements made by associate counsel in New York in connection with attendance of witnesses * ..................... | 798.25 |

---

* Of these three witnesses, one was an expert (neurologist and psychiatrist), and one resided in Florida. Their charges were, respectively, $250.00 and $300.00. The third, a male nurse, appears to have been within the jurisdiction of the Surrogate's Court. He required payment, for three days of his time, of $150,00, which New York counsel considered too high, but agreed to pay, because he felt that it would be imprudent to go into the hearing without his testimony, and feared that he might prove hostile if forced to testify, under subpoena, unwillingly.

| | |
|---|---:|
| Railroad fare (Samuel Want) to New York | 48.22 |
| Travel expense (LeRoy M. Want) to Columbia, S. C. ..................... | 12.56 |
| Postage ............................ | 1.40 |
| | **$ 1,401.93** |

As to Item (b), plaintiff's evidence showed payments aggregating $5,772.15 for expenses of eighteen (18) trips, varying in length from two to four days, made by Samuel Want in connection with the administration of the estate of Jacob A. Want, as follows:

| | |
|---|---:|
| Hotel expenses in New York City ......$ | 2,086.08 |
| Travel expenses, trips to New York and to Washington, D. C. ................. | 3,686.07 |
| | **$ 5,772.15** |

The Special Referee, in discussing these expenditures, commented that they appeared to be unduly large, particularly with respect of the hotel expense items, and that on the basis of the total shown above the average cost per trip was about $320.00. He came to the conclusion that a fair allowance for these traveling expenses would be $4,500.00, or an average expenditure of a little under $250.00 for each trip; and accordingly he reduced the total from $5,772.15 to $4,500.00 and allowed the latter amount. (Reference in Exception 8 to $5,772.15 as the amount allowed is obviously the result of a clerical error.)

Item (c), $361.63 for long distance telephone calls and telegrams, requires no special comment. It is supported by ledger entries in the account of "J. A. Want" in the office records of Samuel Want showing, between February 8, 1947, and December 29, 1949, some 60 long distance calls and 50 telegrams.

In passing upon the reasonableness of the disbursements with which we are now concerned under appellant's Excep-

tion 8, the Special Referee noted the difficulties and complexities involved in the earlier phases of the administration of Jacob A. Want's estate, pointing out that his will had been first admitted to probate in New Jersey; that thereafter protracted litigation had ensued in the Surrogate's Court of the Borough of Manhattan as the result of a claim that Jacob had been at the time of his death a resident of New York; and that in addition the estate had been involved in the estate and gift tax controversy, that had developed into litigation in the Tax Court in Washington, D. C. Viewing the necessity and reasonableness of the disbursements in question in the light of those circumstances, as to which there was no dispute, he allowed them in the amounts before mentioned. His findings in this regard, in which the circuit judge concurred, appear to have reasonable evidentiary support. Exception 8 is overruled.

The account in Darlington County Bank & Trust Co. in the name of "Estate of J. A. Want, by Samuel Want, Attorney", was opened on May 9, 1947, and shows but three deposits, to wit:

| | |
|---|---:|
| May 9, 1947 | $ 22,554.34 |
| July 3, 1948 | 1,100.00 |
| Aug. 5, 1950 | 10,016.69 |
| | $ 33,671.03 |

The initial deposit, $22,554.34, was in the form of a check of Estelle Want transferring the balance in a "Special Account" in her name in Colonial Trust Company, New York, N. Y., remaining after payment of certain debts of Jacob A. Want, certain expenses of his last illness and of the administration of his estate, and a debt due for tuition of his daughter, Jacqueline. That this balance was an asset of the estate of Jacob A. Want appears from Schedule C of the Federal Estate Tax Return for his estate, signed and sworn to under date September 17, 1949, by Samuel Want as co-executor.

The source of the deposit of $1,100 on July 3, 1948, is not apparent from the record before us. It is to be noted that the amount of this deposit exactly equals the appraised value of the automobile listed among the assets of the estate of Jacob A. Want in Schedule F of the estate tax return before mentioned.

> The deposit of August 5, 1950, $10,016.69, we have already discussed.
>
> Of the thirty-three checks drawn against this account:

24—aggregating $18,721.00, were payable to Estelle Want.
(It appears from the government's Exhibit 15 that she received from the estate of Jacob A. Want a monthly allowance of approximately $750.00 for the support and maintenance of Jacqueline) ......$  18,721.00

5—aggregating $4,275.00, were payable to attorneys and accountants employed in the administration of the estate of Jacob A. Want ............ ............  4,275.00

1—in the amount of $6,000.00, was payable to J. G. Maynard and LeRoy M. Want, Attorney, for purchase of a mortgage .  6,000.00

2—were for school and camp fees for Jacqueline, aggregating ................ ...  850.00

1—was to Darlington County Bank & Trust Co., for adjustment of guardianship account ............ ............ .  317.64

33  $  30,163.64

The balance remaining in this account at the time of the death of Samuel Want was, therefore, $3,507.39.

> The Special Referee, having found that the government had proven receipt by Samuel Want of assets of the estate of Jacob A. Want totalling $26,344.34,

and having approved as proper and reasonable disbursements in connection with the administration of that estate the uncontested items to which we have heretofore referred, totalling $15,426.31, proceeds in his report as follows:

"Deducting these proper disbursements from the amount found to be in the Estate of J. A. Want, there is left a balance to be accounted for of only $10,918.03.

"There remains on deposit in the Darlington County Bank & Trust Co. to the credit of the Estate of Jacob. A. Want the sum of $3,507.39. This leaves to be accounted for in the Estate of J. A. Want the sum of $7,410.64."

The Special Referee then discusses the contested items of disbursement (Appellant's Exception 8, ante) and allows them, properly, as we have before stated in the aggregate amount of $6,263.56. Deducting that amount from the balance "to be accounted for in the Estate of J. A. Want," $7,410.64, he concludes that the government's claim should be allowed against the estate of Samuel Want in the amount of $1,147.08.

The Special Referee's finding above quoted, which was concurred in by the circuit judge and is not challenged here, by fair inference is to the effect:

1. That the account in Darlington County Bank & Trust Co. in the name of "Estate of J. A. Want, by Samuel Want, Attorney," including the deposit therein of $10,016.69 on August 5, 1950, was a fund in the hands of Samuel Want identifiable as assets belonging to the Estate of Jacob A. Want; and

2. That the balance of $3,507.39 remaining in that account at the time of the death of Samuel Want is applicable, *in toto*, toward payment of the government's claim. (Whether it may be so applied in this proceeding, to which the estate of Jacob A. Want is not a party, is a matter about which we express no opinion. We note that nowhere in the amended complaint or in any other pleading in the cause is this balance mentioned as an asset of the estate of Samuel Want.)

Appellant's claim against the estate of Samuel Want should have been allowed in the amount of $14,671.16, as follows:

Assets of Estate of Jacob A. Want received by Samuel Want, as found by the lower court .............................$ 26,344.34

Deposit into the account of that estate August 5, 1950 .. ..... .... .........   10,016.69

Total receipts ....... ........... $ 36,361.03

Less:

Disbursements. for expenses of administration of Estate of Jacob A. Want, as allowed by lower court
    Uncontested ........$ 15,426.31
    Contested ..........   6,263.56   $ 21,689.87

Balance chargeable against Estate of Samuel Want ...............$ 14,671.16

If the balance of $3,507.39 in the account of Estate of J. A. Want can be, and is, applied toward payment of the government's claim against that estate for income tax deficiency, its claim against the estate of Samuel Want will be reduced to that extent.

Before addressing ourselves to appellant's final contention, it may be well to review generally, in the light of the conclusions hereinbefore announced, the financial condition of the estate of Samuel Want.

*Assets*
(As shown by Amended Complaint)

Cash receipts ..................... ..............$ 90,176.33
Expenditures ............. .. .............. 18,848.12

Balance cash on hand ................ ........ 71,328.21
Unliquidated assets ........... ......... .. 11,628.62

82,956.83

Less claims ex maleficio allowed as against funds
identifiable as balance of account in Darlington
County Bank & Trust Co. in name of Samuel
Want, Attorney................... .......... 9,823.81

Probable balance available for administration
expenses and debts ......................$ 73,133.02

*Liabilities*

Open accounts (per amended complaint) ...... 278.13
Claims for return of unearned fees (do) ...... 616.66
Funeral Expenses (do) ........ ...... ... 1,030.00
LeRoy M. Want, reimbursement (do) ...... 810.55
Claim of United States based upon income tax
   deficiency Estate Jacob A. Want (allowed) . 14,671.16
Claims based upon trusts ex maleficio but not
   traced into any specific fund or other asset
   (allowed by lower court) ...... ......... 306,960.59

Total apparent liabilities . ...........$324,367.09
(not including commissions, fees and
other expenses of administration)

If, as decreed by the lower court, the available balance, $73,133.02, is, after payment of funeral and administrative expenses, dower and homestead, to be applied next toward payment of the *ex maleficio* claims amounting to $306,960-.59, it is obvious that the other claimants, including appellant, will receive nothing.

In its determination of priorities the lower court held, in effect, that under the doctrine announced in *Ex parte Bank of Aynor,* 144 S. C. 147, 142 S. E. 239, 244, all property in the possession of Samuel Want at the time of his death insolvent became, by the very fact of his defalcations, a trust fund, of which his executrix is trustee, for the benefit of the persons whose money had been lost through such breaches of trust, to the exclusion of all other creditors. In the category of such "beneficiaries of trusts *ex maleficio*" the court placed: (a) those whose claims are founded upon collections made for them by the decedent and not remitted; and (b) those whose claims are based upon funds placed by them in decedent's hands for investment and by him misappropriated or dissipated. As to both "collection claimants" and "investment claimants" the record before us is devoid of evidence tending either: (a) to trace the funds so unremitted or misappropriated or dissipated into any specific fund, bank account, or other property in the hands of the executrix; or (b) to indicate that the assets in the hands of the decedent at the time of his death had been directly or indirectly augmented by his alleged defalcations. Nor does the record before us reveal, specifically or approximately, the dates of the various defalcations charged against the decedent by them. In most instances these claimants were unable to date their trust transactions with Mr. Want more specifically than "from time to time", or "approximately four or five years before Mr. Want's death", or, "prior to December 9, 1953", or "during the year 1941 and every year thereafter including the year 1953", or "between the dates of September 11, 1945 and November 9, 1946", or "during the period of more than ten years preceding his death on December 9, 1953".

While some statements in the Bank of Aynor opinion went beyond the requirements of the issues in that case, we do not think that the decision, when viewed in the light of the factual situation before the court in that case, requires the conclusion reached by the lower court in the case at bar. The facts in the *Bank of Aynor case* were as follows:

American Bank & Trust Co., a Columbia bank, was taken over by the State bank examiner on the morning of June 26, 1926. At that time the Bank of Aynor had to its credit in American Bank & Trust Co. an unsecured checking account balance of some $27,000.00, and also had a claim against it for $44,189.38 by reason of its having appropriated the proceeds of sale of certain notes of Horry County which had been left with it by the Bank of Aynor on June 21, five days before its failure, for prompt sale and remittance in time to liquidate other notes of the county, held by Bank of Aynor, that were to mature on June 28. *American Bank & Trust Co.* sold the notes to a New York broker, who, in accordance with its instructions, deposited the proceeds, $44,189-.38, in National City Bank of New York to the credit of South Carolina National Bank. On June 24 National City Bank wired American Bank & Trust Co. and South Carolina National Bank that said proceeds had been so credited; and thereupon South Carolina National Bank credited the account of American Bank & Trust Co. with said amount. During that day and the next, which was the last of its existence, American Bank & Trust Co. withdrew most of the funds so credited to its account, using them to reduce its own liabilities, in a desperate effort to avoid collapse. On June 25, in answer to inquiry by the President of the Bank of Aynor concerning the Horry County notes, the Chairman of the Board of Directors of American Bank & Trust Co. replied that their sale had not been consummated, but that in order to protect the Bank of Aynor in the transaction, American Bank & Trust Co. had set aside, in a package marked "Bank of Aynor Securities", securities aggregating $73,241.23, which he thereupon exhibited. The President of the Bank of Aynor told him to put them in the vault of American Bank & Trust Co. for safekeeping. This was done, and the package of securities, so marked, came into the possession of the State Bank Examiner, who on June 28 delivered them to the Bank of Aynor.

Upon this state of facts the Bank of Aynor petitioned in the receivership proceedings, claiming:

1. A preference, in the administration of the assets of the defunct bank, to the extent of $44,189.38; and

2. A lien upon the securities before mentioned, as collateral security for its obligation amounting, as aforesaid, to $44,189.38.

Upon appeal, this court (composed of four justices), modifying the decree below:

1. Unanimously held that the Bank of Aynor was entitled to a lien upon the pledged securities to the extent of the proceeds of sale of the Horry County notes, $44,189.38, with interest from June 24, 1926; and

2. Was evenly divided as to whether the Bank of Aynor was entitled to preference, over depositors and general creditors, in the distribution of the assets of the bank in the hands of the receiver, and left that question "open for future decision, in the event that the bank cannot realize its debt out of the assigned assets."

The language quoted below from the main opinion in the Bank of Aynor case [142 S. E. 242] has been given, in some of our later decisions and by some commentators, a meaning more broad than is warranted, in our opinion, by its context.

"But, even if the assignment of the securities cannot be sustained, the Bank of Aynor would be entitled to priority in the distribution of the assets of the bank, for the reason that, under the circumstances detailed, the funds to which it was entitled became, in the hands of the American Bank & Trust Company, a trust fund, which were appropriated by the officers of the American Bank & Trust Company to the uses of the bank, under circumstances which, in the absence of protection to the Bank of Aynor, constituted a breach of trust with fraudulent intent, practically a theft, which inured to the benefit of the American Bank & Trust Company; *ex equo et bono* the obligation is upon the receiver to make restitution thereof out of the entire assets of the insolvent

bank, in priority to the claims of depositors and general creditors. * * *

"The authorities are much divided upon this question. Many of them, and we must admit a decided majority of the decided cases, are to the effect that, even in cases of fraudulent misappropriation .of trust funds which entered into the assets of an insolvent corporation, the beneficiary of the trust is not entitled to priority over general creditors in the distribution of assets by a receiver, unless he can show that the trust funds have been received by the receiver—he must be able to trace the funds—to establish a res upon which the trust may operate. (See extended note upon the subject in L. R. A. 1916C, 21, particularly at page 53.)

"Other cases from courts of the highest respectability take a different view, and accord the right of priority in the distribution of the assets of the receivership estate, not .upon the ground that assets sufficient to respond to the obligation have reached the hands of the receiver, but that the misappropriated funds have reached the coffers of the corporation before receivership, and have been used for its benefit.

"The minority rule appeals most strongly to our sense of equity and justice. We do not think that the cases which enforce the majority rule draw the very material distinction between an ordinary constructive trust and a constructive trust *ex maleficio*. In the former class of trusts, the title has properly passed to the trustee, and it has very properly been held that one who seeks to impress a trust upon a certain fund must of necessity point out the funds—there must exist the res upon which the trust is to be impressed. It is therefore perfectly logical, as held in the cases of *White v. [Commercial & Farmers'] Bank*, 60 S. C. 122, 38 S. E. 453, and *Citizens' Bank [of Pinewood] v. Bradley*, 136 S. C. 511, 134 S. E. 510, that in cases of receivership the beneficiary must show that funds have come into the hands of the receivership upon which the trust is to be declared. The beneficiary of a simple constructive trust is no more than an ordinary creditor, except where he can point to a fund in the hands of the

receiver upon which his asserted trust is to operate. Otherwise, to allow the trust would grant him a preference over other creditors who possess an equity and equal to his.

"But the case is quite different from a constructive trust *ex maleficio*. There the trustee has acquired no more title to the misappropriated fund than a thief would have acquired. As a matter of law and morals he occupies that detestable position; and the beneficiary occupies a much more favorable position than that of the general creditors or the beneficiary of a simple constructive trust. If it can be shown, therefore that the misappropriated fund went into the coffers of the corporation prior to receivership, was disbursed by the corporation in the payment of its debts or in the acquisition of property, there can be no reason or justice in allowing the general creditors to receive the benefit of the stolen property, simply for the reason that a corresponding amount of money was not turned over to the receiver. The corporation will have received the benefit of the stolen fund by the reduction *pro tanto* of its liabilities; the general creditors should not be heard to say that they may hold on to the benefit of the theft and not account for it."

Except as to whatever balance of the proceeds of the Horry County notes may have been identifiable as remaining on deposit in South Carolina National Bank to the credit of American Bank & Trust Co., the Bank of Aynor was not the beneficiary of a trust fund in the hands of the receiver. So far as the statement just quoted may suggest that all assets in the receiver's hands constituted a trust res of which Bank of Aynor was beneficiary to the extent of its money that had been wrongfully spent by American Bank & Trust Company, it is, in our opinion, erroneous. Actually the conclusion to which the main opinion led was this: that because the proceeds of the notes that had been left with American Bank & Trust Company in trust had been misappropriated and used to reduce its liabilities immediately prior to its failure, the Bank of Aynor, whose money had thus indirectly swollen the assets that came into the receiver's hands, was entitled, in the

distribution of the insolvent bank's assets, to priority over depositors and general creditors. Stated more simply, the opinion in reality recognized the Bank of Aynor not as a cestui entitled to a trust res, but as a preferred creditor.

Like conclusion is apparent, by implication at least, in later decisions of this court in which the Bank of Aynor case has been referred to with approval. Thus in *Ex parte Hernlen,* 156 S. C. 181, 153 S. E. 133, 69 A. L. R. 443, a depositor who had been about to withdraw her deposit of $8,000.00 from the bank, but who had refrained from doing so upon the express agreement of the bank, through its President. eleven days before it failed, that it would invest it for her in a certain note and mortgage then being prepared by the bank's attorneys, was held entitled to preference over the general creditors to the extent of her deposit, which had augmented the assets of the bank that had come into the receiver's hands.

In *Bradley v. Guess,* 165 S. C. 161, 163 S. E. 466, 471, the court said: "The general principle upon which a preference was allowed in the case of Bank of Aynor was that the cash assets of the American Bank were 'swelled' to the extent of the money received from the County notes just three days before closing, and that presumptively such funds were still assets in the hands of the closed bank. *Bank [of Pinewood] v. Bradley,* 136 S. C.[511] 523, 134 S. E. 510."

See also *Hampton County v. Lightsey,* 164 S. C. 63, 71, 161 S. E. 879; *Spartanburg County v. Arthur,* 169 S. C. 456, 169 S. E. 235; *Bonebrake v. Jefferies,* 177 S. C. 105, 180 S. E. 796; *Wilson v. Bank of Camden,* 180 S. C. 359, 185 S. E. 617; *Spartan Mills v. Law,* 186 S. C. 61, 194 S. E. 653. Compare *Ex parte Michie,* 167 S. C. 1, 165 S. E. 359.

Examination of our decisions and of the authorities below cited bearing on the subject, leads us to the following conclusions:

1. If a trustee, having commingled a trust fund with his personal funds in a single bank account or other fund, becomes insolvent, the trust fund does not, by the mere commingling, lose its identity. If the *cestui* can substantially identify it, by tracing it into the commingled fund in the hands of the insolvent's receiver, he may reclaim it. In those circumstances there is a trust *ex maleficio,* because there is a trust res, *viz.*: so much of the commingled fund as has been thus identified.

2. Substantial identification, *e. g.,* by tracing trust funds or property, or the proceeds of sale of such property, into the commingled fund in the hands of the receiver, is essential if the claimant is to establish his position as that of *cestui* rather than creditor; for there can be no *cestui* except there be a trust *res.*

3. Where the claimant cannot trace his money into, and thus identify it as part of, a particular fund or property in the hands of the receiver, his status is that of a creditor in the receivership even though he may be able to show that his money augmented the general assets of the insolvent existing at the time of the receivership and thus coming into the receiver's hands. He is a creditor, not the *cestui* of a trust, for the simple reason that there is no identifiable trust *res.*

Bogert, Trusts and Trustees, Chapter 44, Sections 921-930; Scott on Trusts, (2d) Ed., Vol. IV, Sections 521-521.3, 538-541; 547; 7 Am. Jur., Banks, Sections 788-804; 28 Am. Jur., Insolvency, Section 53; 54 Am. Jur., Trusts. Sections 256, 259; 90 C. J. S., Trusts, § 438a, b; Annotations: 26 A. L. R. 3; 55 A. L. R. 1275; 82 A. L. R. 46, 52, 81, 276; 102 A. L. R. 372.

The cash on hand and bank balances to the credit of Samuel Want at the time of his death amounted to $11,-431.33, as follows:

| | |
|---|---|
| Cash ............. ................... | $ 10,980.00 |
| Balance in S. C. National Bank ...... ... | 166.44 |
| Balance in Peoples Bank, Hartsville ...... | 284.89* |

$ 11,431.33

He also had, in an account in Darlington County Bank & Trust Company in the name of Samuel Want, Attorney, a balance of $9,823.81, which, as the lower court held, has been identified as the property of the claimants Dickey, Darlington County Bank & &Trust Co., and Estate of Mollie H. Johnson.

The rest of the "Cash Receipts" amounting to $90,176.33 as shown by the Amended Complaint, was made up of the following items, all collected by the executrix after his death:

| | |
|---|---|
| Proceeds of life insurance ............... | $ 43,071.92 |
| Salary for December, 1953, Darlington County Bank & Trust Co. ............. | 246.25 |
| Overpayment 1952 Federal income tax, credited on 1953 estimate ............... | 1,869.93 |
| Miscellaneous notes and other obligations due decedent .......................... | 6,741.87 |
| Proceeds of sale, law library and equipment .. | 5,005.80 |
| Proceeds of sale, automobile ............. | 1,415.00 |
| Legal fees due decedent ................. | 4,727.96 |
| Rent advanced for clients, collected after death ............................... | 170.00 |
| Miscellaneous refunds collected .......... | 402.86 |
| Collection of assigned policy of life insurance | 1,250.02 |
| Dividends on stocks and savings and loan deposit ........................... | 114.50 |
| Proceeds of sale of stocks ............... | 3,753.00 |
| Miscellaneous collections ............... | 152.08 |

$ 68,921.19

---

\* Two hundred thirty-four dollars and eight-five cents of this has been identified as the property of the claimant Kilgo.

Because there is no evidence tending to identify, in the hands of the executrix, any specific trust *res* held by the decedent at the time of his death in trust for any of the claimants referred to in the Special Referee's report as "collection claimants" and "investment claimants" respectively, (other than the claimants who have identified as their property the balance of $9,823.81 in Darlington County Bank & Trust Co. and $234.85 of the balance in Peoples Bank of Hartsville, and such claimants as may prove their equitable ownership of other specific funds or property, *e. g.,* the claimants Haynsworth and McCullough), we conclude that the status of such claimants is not that of *cestuis que trustent,* but is that of creditors of the decedent's estate. As such, their claims are, as the lower court properly held, subordinate to funeral and administrative expenses and to dower and homestead. Whether or not their claims are entitled to priority over those of the general creditors is a matter not involved in this appeal. The issue before us is as to priority between their claims and that of the government for the Jacob A. Want income tax deficiency. Since they are creditors, not *cestuis,* that issue is resolved against them by the provisions of U. S. C. A., Title 31, Sections 191, 192, which, as conceded in the lower court, gives to the government's claim priority over those of all other creditors.

The judgment appealed from is modified accordingly, and the cause is remanded for further proceedings in conformity with the views herein expressed.

Modified and remanded.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.