40 F.2d 673 (1929)
LIVINGSTON
v.
BECKER.
No. 8201.
District Court, E. D. Missouri, E. D.
October 12, 1929.
*674 John H. Cassidy, of St. Louis, Mo., for plaintiff.
Louis H. Breuer, U. S. Atty., of Rolla, Mo., Claud M. Crooks, Asst. U. S. Atty., of St. Louis, Mo., and C. M. Charest and T. H. Lewis, Jr., General Counsel, Bureau of Internal Revenue, both of Washington, D. C., for defendant.
FARIS, District Judge.
This case was tried on the merits before the court, without a jury. There was some question raised, prior to the hearing on the merits, as to whether the case was triable to a court, or triable to a jury. The contention was made that it was triable to the court alone. But be that as may be, it was agreed by counsel that it should be submitted to the court, without a jury, and was thus submitted.
Livingston, the plaintiff, was successor trustee in a deed of trust, whereby all of the property of a certain insolvent company, which was the maker of this deed of trust, was conveyed to one Bentrup, as trustee, to be by him administered, wound up, and paid over to creditors of the company.
Before the estate was fully wound up, Bentrup resigned as such trustee, and Livingston, in some manner not pertinent here, became trustee in his stead. At all times during such trusteeship and during the administration of said estate, by both Bentrup and plaintiff, the insolvent company owed the United States certain taxes, which had accrued some four or five years prior to the insolvency and to the execution of the deed of trust.
During the incumbency of Livingston as trustee, he paid out of the assets in his hands debts due to the creditors of the company, to an amount in excess of that due to the United States for the taxes in question. It is not shown, and is strenuously denied, that he had any actual notice or knowledge, or even any sufficient notice to put him on his inquiry, of the claim of the United States, when he so paid out these assets to creditors of the estate.
In this situation, and when he had exhausted the entire assets in his hands by the payment thereof to creditors, demand was made on him by the defendant, as collector of the First internal revenue district of the United States for the district of Missouri, for the payment of these taxes. On duress of the threat to distrain, Livingston paid, under protest to defendant, from his own personal money $2,049.38; being the total amount, with penalties, of the taxes due from the estate in his hands. To recover back this sum he brings the suit at bar.
No contention is made that the statute relied on (section 192, tit. 31, U. S. C. [31 US CA § 192]) does not apply to an assignee for the benefit of creditors of an insolvent estate, such as this was. This seems to be conceded, and correctly conceded in my opinion. But it is contended that defendant should have brought a plenary suit against plaintiff; that distraint was not the proper method of enforcing the collection of this money from plaintiff, and therefore, if section 192, supra, is construed to permit collection by distraint, and not by plenary action, it is unconstitutional, as denying plaintiff his day in court, and that though it is a tax as against the taxpayer who owed it, it is not a tax but a penalty as against an assignee, who therefore must be sued therefor in a plenary suit.
While both of these contentions are exceedingly plausible, I am clearly of the opinion that I need not consider them now, and at this stage of the case. The facts in the case have passed beyond this point, I think. The collector demanded this money out of the personal pocket of plaintiff, and threatened distraint; under this threat plaintiff paid. If it is not a tax as against plaintiff, he could have sued defendant before he paid, to enjoin collection by distraint, when distraint was threatened, and in such action for an injunction, the question of the unconstitutionality of collection by distraint, instead of by a plenary suit, might well have been raised.
I think there is nothing in section 154, tit. 26, U. S. C. (26 USCA § 154), which forbids, or would have forbidden, such injunction. True it is that said section 154 forbids the enjoining of either the assessment or the collection of a tax; but it does not leave open *675 to the collector the right to collect by distraint any obligation alleged to be due to the United States, by the mere expedient of calling the claim a tax, when it is not such. Lipke v. Lederer, 259 U. S. 557, 42 S. Ct. 549, 66 L. Ed. 1061.
Confessedly, the defendant got the money in dispute from plaintiff, and still has it, within purview of the law. Though he may have got it by a method which was improper, or not in due course, yet, having got it, he has a right to keep it, because it was due from plaintiff to the United States, if such be the fact. And I think this is true even if it is conceded that the remedy of defendant was by a plenary suit, and that distraint did not lie, and that such distraint, if actually attempted, could, as a matter of law, have been enjoined. Certainly, no such vain and futile thing will now be done as to return this money to plaintiff, so that he may be sued for it by defendant in a plenary suit, so as to legally determine whether plaintiff is in fact liable to respond to the United States for it or not; for in such an action, all that could be therein determined would be the question of plaintiff's ultimate liability to pay this same money, and such fact of ultimate liability is one of the issues here. So, I repeat, that we have passed the point in the case whereat it is necessary to pass on the question of whether distraint would have lain, and whether a statute providing for collection by distraint of a claim like this is constitutional.
To my mind, this question is closely analogous to that wherein a litigant, though entitled to be sued in a plenary action, yet appears, answers, and is fully heard as to all his defenses, in a summary action. Babbitt v. Dutcher, 216 U. S. 102, 30 S. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969; Weidhorn v. Levy, 253 U. S. 268, 40 S. Ct. 534, 64 L. Ed. 898. Afterwards, although the procedure was improper, he may not be heard to complain that a summary proceeding did not lie. This situation has arisen on numerous occasions in bankruptcy matters, wherein it is sometimes difficult to determine whether the action brought should be a summary one, or a plenary one; even where the courts determine that the action should have been a plenary one, it has yet been uniformly held that where, in a summary suit, defendant appeared and answered, and had considered every defense that he could have made had the suit been a plenary one, that he has no occasion for complaint. In re Rockford Produce & Sales Co. (C. C. A.) 275 F. 811; In re Raphael (C. C. A.) 192 F. 874; Board of Trade, etc., v. Johnson (C. C. A.) 283 F. 374.
The government contends that plaintiff got constructive notice by the fact that the collector filed a notice of lien under what is now section 115, tit. 26, U. S. C. (26 US CA § 115), with the clerk of this court. The fact may be good as notice of a lien, and may bind purchasers, judgment creditors, and mortgagees; but it does not follow that it is such constructive notice to a trustee as would, if he acted contrary to it, make him personally liable. The notice required is fact notice and not constructive notice, but it only extends to so much knowledge of fact as will put a prudent person on inquiry. United States v. Clark, Fed. Cas. No. 14,807; United States v. Fisher, 2 Cranch, 358, 2 L. Ed. 304.
These views leave but two chief questions in the case. One of these is a question of mixed law and fact, and the other is a question of law and in a way, also, a question of fact. The first question is whether plaintiff must have knowledge, or at least notice sufficient to put a prudent person on inquiry, as to the existence of the claim of the United States, before he pays out money to private creditors, as a condition precedent to personal liability. I am constrained to hold, as already forecast, that he must have such notice. This answers the question of law propounded on the first point.
Upon the question of fact, as to whether he had actual notice, or any notice sufficient to put him, or any prudent person, on inquiry, I am constrained to find from the evidence that he did not.
The next question is, in a manner of speaking, bilateral, and bears on and rules the question last above mentioned. Did Bentrup, the predecessor of plaintiff in this trust deed, have any legal notice of the claim of the United States? This is a question of fact. If Bentrup had such notice, did the notice to him afford constructive notice to plaintiff, by reason of the fact that plaintiff was appointed successor trustee to Bentrup?
The evidence relied on to show notice to Bentrup was a carbon copy of a letter addressed to him as such trustee, which carbon copy was found in the official files of the defendant collector. There was no proof that the original had ever been mailed, or otherwise delivered to Bentrup, and no proof that it had ever been deposited in the mails, or ever received, and the original was nowhere found in the files of the estate. Obviously, *676 we need not consider whether, presuming both that this letter was mailed, and that it was delivered to Bentrup, thus giving him notice, we may further presume that he communicated the fact of the letter to plaintiff. The latter swears that he did not. So, on that point, no one contradicting, there is no room left for a presumption. There is, then, in the case no reason for considering the forbidden doctrine of bottoming a presumption on a presumption.
The other point cuts deeper, and is more troublesome than that. It is whether notice to Bentrup, if he got such notice through the original letter, carbon copy of which was offered, was notice, or comported notice to plaintiff constructively. It is clear that plaintiff never had any actual notice whatever.
While the views already taken render it unnecessary to pass upon this question, I may say, in passing, that I am unable to take the view that notice to Bentrup (even if the meager evidence of the finding of this carbon copy among the files of the collector's office was sufficient to give notice to Bentrup) also gave notice to plaintiff, merely from the fact that plaintiff was later appointed trustee to succeed Bentrup. The only case on this proposition of constructive notice through dealings with a predecessor trustee, which I have found, and which the diligence of counsel has found, is the English case of Hallows v. Lloyd, 39 Ch. Div. 686, 58 L. J. Ch. 105.
It will be presumed that delivery to the addressee took place when a letter addressed to him was properly stamped and deposited in the post office, certainly absent countervailing evidence. Indeed, such deposit in the mail may prima facie be presumed, if there is no direct evidence of such mailing, if the facts disclose handling the matter in the usual and ordinary course of business. But there is here no evidence, I repeat, of the fact of such deposit, either directly or from inferences, arising from the customary course of business. All there is, is that a carbon copy of the letter to Bentrup was found among the files of the collector. There is no evidence of mailing, either directly or according to the custom of the office.
I conclude: (a) That the statute relied on, and which creates a personal liability in favor of the United States and against a trustee, is highly penal; (b) that notice of the existence of a tax due the United States must be given to the trustee, at least to the extent of bringing home to him such facts as would put a reasonable and prudent person on inquiry; (c) that no notice of the latter sort came to plaintiff, so far as the record discloses; and (d) that granting, arguendo, that the law is that plaintiff would be bound, absent personal notice, if the record disclosed sufficient notice to Bentrup, there is, yet, no such notice to Bentrup, so far as the record shows.
I need not, then, discuss further whether notice to Bentrup would have been notice to plaintiff, merely from the fact that plaintiff became the successor trustee in the deed of trust to Bentrup. I take leave to doubt it, both from the reason of the thing, and from the holding in the Hallows v. Lloyd Case, supra, though conceding that there may be situations in which notice to one person occupying an office would be notice to his successor in that office. Such notice might be sufficient in a case of bankruptcy, or other similar office created by statute. But I need not, I repeat, consider the point further, for it is not without its difficulties.
It results that judgment should be for plaintiff for the sum of $2,049.38, with interest at 6 per cent., from April 26, 1928, and so it is ordered.
The court further finds, however, that the collector, in exacting this tax, in collecting same, and in all his actions taken to that end, had reasonable cause for the actions which he took, and I shall, if necessary, so certify.