Estelle WANT, Trustee and Transferee, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 279, Docket 26003.

United States Court of Appeals Second Circuit.

Argued April 14, 1960.

Decided June 13, 1960.

George D. Webster, Washington, D. C., Davies, Richberg, Tydings, Landa & Duff, Washington, D. C., of counsel, for petitioner.

Morton K. Rothschild, Atty., Dept. of Justice, Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before SWAN, CLARK and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

Petitioner, Estelle Want, is the sister of Jacob A. Want, who was the founder of a corporation engaged in the printing business and its president until his death in February 1947. In January, 1945, Jacob Want established a trust for his only child, Jacqueline. He named pe-

titioner and a brother, Samuel, as co-trustees. Jacob transferred to the trust $82,000 in cash in 1945 and 397 of the 400 outstanding shares of the corporation in 1946. Petitioner and Samuel were also named as co-executors in Jacob's will executed in April, 1945; the will bequeathed his entire estate to them as trustees under the trust for Jacqueline.

Some time in 1945 Jacob Want began to be affected by the chronic degenerative disease that was to cause his death. In the fall of that year petitioner joined him in New York to assist in his business affairs and to care for Jacqueline. She soon learned that Jacob had been giving large sums of money to Blossom S. Ost. In 1946 petitioner caused certain of Jacob's funds to be deposited in her own bank account in order to prevent further diversions to Mrs. Ost.

Several months after Jacob's death in early 1947 petitioner and Samuel, in their capacity as executors, filed original gift tax returns for 1945 and 1946. The gift of $82,000 to the trust in 1945 was declared and the tax thereon was paid; the gift of the shares in 1946 was declared but no tax was paid since the shares were claimed to be worthless at the time of transfer. The executors noted on the return that additional gifts may have been made by the decedent to Blossom Ost, but they professed their inability to determine the amount of these and thus made no declaration of them. Amended gift-tax returns, filed in June, 1949, made certain changes not here material and repeated the statements regarding the gifts to Mrs. Ost. In June, 1947, Mrs. Ost filed Donee's Information Returns listing gifts to her from the decedent of some $15,000 in 1945 and some $32,000 in 1946. Since the donor had failed to pay the gift tax when due, Mrs. Ost became liable for it as a transferee, Int.Rev.Code of 1939, § 1009, 26 U.S.C.A. § 1009. In a Tax Court proceeding she admitted this liability and deposited $2,500 in an offer of compromise; as of the date of the Tax Court decision in the instant case the offer had been neither accepted nor rejected by the Commissioner.

On May 25, 1951, the Commissioner issued six notices of deficiencies to Samuel and Estelle. Five related to alleged liability for additional estate taxes, in both their individual and representative capacities. The sixth, issued to "Samuel Want and Estelle Want, Trustees and Transferees," asserted their liability "as trustees and transferees" for deficiencies in gift tax and penalties. The statement accompanying this notice of deficiency showed that the adjustments, so far as here material, were the inclusion of gifts of $15,000 to Mrs. Ost in 1945 and gifts of $34,000 to her in 1946, and, for the latter year, the alleged value of the 397 shares given to the trust for Jacqueline.

The contests of all these deficiencies were consolidated for trial in the Tax Court. Samuel had died in 1953 and his executrix, Fannye Want, was substituted as a party. The Tax Court held against the Commissioner on the principal estate tax issue, namely, whether the several transfers to the Jacqueline trust were includible in the decedent's gross estate as gifts in contemplation of death, Int.Rev.Code of 1939, § 811(c), 26 U.S.C.A. § 811(c), and the Commissioner has not sought review. Judge Kern held the trustees were not liable as transferees because of the donor's failure to pay gift tax on the 397 shares, since the shares "had no fair market value" at the time of transfer; as to this likewise the Commissioner has not sought review. Rejecting petitioner's claim that "she was a fiduciary in name only," the judge held, without further explaining the basis for his decision, that Estelle and Samuel's estate were liable "as trustees and transferees" of the property of Jacob Want for the gift tax and penalties owing on the transfers to Blossom Ost in both 1945 and 1946, to wit $2,798.80 for 1945 and $6,402.84 for 1946. Estelle has petitioned for review of this last determination; the executrix of Samuel's estate has not, the Supreme Court of South Carolina having barred the assertion of

the tax claims against Samuel's estate, Want v. Alfred M. Best Co., 1958, 233 S.C. 460, 105 S.E.2d 678.

█ The Commissioner first urges that petitioner is precluded from raising the arguments against transferee liability on which she now relies most heavily, because of her alleged failure to assert them in the Tax Court. We find no merit in the Commissioner's contention, Hormel v. Helvering, 1941, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037.

Section 1119(a) of the 1939 Code, 26 U.S.C.A. § 1119(a) (Int.Rev.Code of 1954, § 6902(a), 26 U.S.C.A. § 6902(a)) provides that "in proceedings before the Tax Court the burden of proof shall be upon the Commissioner to show that a petitioner is liable as a transferee of property of a taxpayer * * *" In paragraph 7 of her petition in the Tax Court, Estelle declared that "the notice of deficiency alleges no facts upon which to base a determination that the petitioners are liable as trustees or transferees * * *" The Commissioner's answer sought to meet this by alleging that in 1945 Jacob executed and delivered the trust instrument to petitioners, that petitioners assumed possession of the corpus of the trust, that Jacob made gifts of some $15,000 to Mrs. Ost in 1945, that in 1946 Jacob transferred to the trust 397 shares of his company and made gifts to Mrs. Ost of some $34,000, and that no tax had been paid on any of these gifts save the original $82,000 gift to the trust. The answer further alleged that "the assets received by the petitioners, as trustees, from the said transferor exceeded in value the amount of the liability of the transferor for Federal gift taxes and penalties for the calendar years 1945 and 1946, together with statutory interest" and "that by reason of the transfers of property as gifts as hereinabove set forth, and the receipt thereof by the petitioners herein, the petitioners became and are personally li-

able as trustees and transferees under the provisions of sections 1009 and 1025 of the Internal Revenue Code * * *" Petitioners filed a reply admitting the receipt of the property, asserting that the 397 shares had no value at the time of transfer, putting the Commissioner upon proof as to the gifts to Mrs. Ost and denying his assertion of transferee liability.

Petitioner's denials of the Commissioner's assertion of transferee liability were general enough to encompass any legal argument she might later choose to make. It is true that at the trial petitioner's counsel seemed principally intent on attempting to convince the court that petitioner was only a "nominal trustee" in view of Samuel's domination of the trust's affairs and, if this claim was rejected, in establishing her right to an offset of the $2,500 that Blossom Ost had deposited in offer of compromise. But her main brief, filed after trial, explicitly made one of the arguments on which she now relies, and her reply brief at least suggested, if it did not clearly state, all the others. To be sure the petitioner may have stated her arguments more effectively in the brief filed in objection to the Commissioner's "Rule 50" computation, where "no argument will be heard upon or consideration given to the issues or matters already disposed of * * *"; but that does not prove that she failed to put the issues before the Tax Court at the proper time. We pass, therefore, to the merits.

Section 1025(a)(1) of the Internal Revenue Code of 1939, to which all references will relate unless otherwise stated, enacts that "the liability, at law or in equity, of a transferee of property of a donor" to pay the gift tax deficiency, penalties, interest, etc., may be collected in the same manner that the tax would be collected from the donor. This authorizes issuance of notices of deficiency by the Commissioner and proceedings in the Tax Court by the taxpayer.[1] The liability

1. Prior to the 1926 Act the government could assert transferee liability only through a suit. See Latham, Liability of Transferees Under the Revenue Act of 1926, 22 Ill.L.Rev. 233, 234 (1927).

"at law" of a donee derives from § 1009 which provides that the gift tax "shall be a lien upon all gifts made during the calendar year" and "the donee of any gift shall be personally liable for such tax to the extent of the value of such gift" if the donor does not pay the tax when due; under § 1025(f) a donee is a "transferee." Section 1009 has been interpreted to impose personal liability on a donee not only for the tax owing on the gift to him but also for the tax due on all other gifts made by the donor during the calendar year. Baur v. Commissioner, 3 Cir., 1944, 145 F.2d 338. However, by the plain terms of the statute, the liability is limited to the value of the gift to the particular donee sought to be charged.

■ Exposition of this much of the statutory framework is sufficient to dispose of one of the issues. No liability "at law" can be imposed on petitioner under § 1009 for the tax on the gifts to Blossom Ost in 1946. For the Tax Court found (and the Commissioner does not challenge the finding) that the deceased's only gift to the trust in 1946, the 397 shares of stock, had no value, and the Commissioner asserts no other 1946 transaction in which petitioner was, or assumed the liability of, a "donee."

The question of 1945 gift-tax liability "at law" is more complex. The Jacqueline trust, of which the petitioner was a trustee, received gifts of $82,000 in 1945, and there are taxes and penalties owing on the gifts to Blossom Ost in that year. Petitioner claims nevertheless that she is not liable since she says § 1009 imposes liability only on the beneficiary rather than the fiduciary and, in the alternative, that if she is liable, her liability is limited to the extent she now holds

funds of the trust. The Commissioner asserts liability and contends this is limited only by "the value of the property at the time it was transferred to the trust [in 1945] * * *."

The Commissioner's position is based on § 1026(b), 26 U.S.C.A. § 1026(b), providing that:

"upon notice to the Commissioner that any person is acting in a fiduciary capacity for a person subject to the liability specified in section 1025, the fiduciary shall assume, on behalf of such person, the powers, rights, duties, and privileges of such person under such section (except that the liability shall be collected from the estate of such person), until notice is given that the fiduciary capacity has terminated."

The Commissioner says that the Jacqueline trust or its beneficiary is a "person subject to the liability specified in § 1025" and that under § 1026(b) the trustee assumes the "duty" to satisfy the liability.[2]

■ The filing of a Donee's Information Form on behalf of the trustees of the Jacqueline trust was sufficient to give notice of the fiduciary relationship, and thus to bring § 1026(b) into play, even though the trustees did not file the form provided for that purpose, Treas. Reg. 118, § 39.312–1. See Fidelity Trust Co. v. Commissioner, 3 Cir., 1944, 141 F.2d 54, 57; Fletcher Trust Co. v. Commissioner, 7 Cir., 1944, 141 F.2d 36, 40–41, certiorari denied 1944, 323 U.S. 711, 65 S.Ct. 36, 89 L.Ed. 572. Both these cases uphold transferee liability by a trustee under such circumstances, the former on the basis that the trust estate and the latter on the basis that the bene-

2. There is another conceivable theory, namely, that the trustee is himself the "transferee" within the meaning of § 1025(f) and is therefore personally liable under § 1009 to the extent of the value of the gift made to him in his fiduciary capacity. This theory is stated and rejected, we think properly, in 1 Paul, Federal Estate and Gift Taxation, § 13.50, at 771 (1942):

"If the term 'transferee' is given its broadest meaning, a fiduciary is a transferee since property has been transferred to him, but such an extension of the term would be inconsistent with its use in the statute * * *." See Fletcher Trust Co. v. Commissioner, 7 Cir., 1944, 141 F.2d 36, 40.

ficiary was the transferee under § 1025, whose obligations the trustee assumed under § 1026(b). We think, however, that § 1026(b) does not impose a liability on the trustee beyond the amount of the trust assets when the claim is asserted. The parenthetical clause provides "that the liability shall be collected from the estate of such person." Whether "such person" means the trust or the beneficiary, the reference is clearly to the estate held in a fiduciary capacity. And a statement that a claim shall be collected only from a designated fund would seem to refer to the fund as it stands when the claim is asserted, not as it stood some time before.

The legislative history supports this. Section 1026(b) was introduced into the tax laws (along with the transferee provisions of Int.Rev.Code of 1939, § 1025) by the Revenue Act of 1926, ch. 27, § 281, 44 Stat. 62, and there have been no significant changes since. In explaining the purpose of the new section, the House Committee said:

> "The right of the Commissioner to assess and distrain and otherwise proceed for the collection of tax depends, for instance, upon giving notice of the deficiency to and making demand upon the proper person. It, therefore, becomes necessary to make certain that there shall be some individual to whom the notice may be mailed and upon whom the demand shall be made, in case of, for example, an incompetent, a decedent's estate, or an estate in the hands of a receiver or trustee in bankruptcy.

> "To accomplish this purpose, this section provides that if the Commissioner of Internal Revenue has been notified as to the identity of the fiduciary, notice is to be mailed to and demand made on the fiduciary. In case the Commissioner has not been notified of the fiduciary, notice is to be mailed to and demand made on the taxpayer at his last known address."

H.R.Rep. No. 1, 69th Cong., 1st Sess., reprinted in 1939–1 Cum.Bul. (pt. 2) 354. The function of the section is thus procedural. When notice has been received, the Commissioner can proceed in form against the trustee, knowing that any judgment entered will be binding on the persons holding beneficial interests and on the trust assets themselves. There is no indication that the section was intended to impose a new and drastic personal liability on fiduciaries, a subject which was left to be dealt with by Rev. Stat. § 3467, 31 U.S.C.A. § 192, discussed below.

The authorities relied on by the Government not only are not contrary to this interpretation but support it. In Fidelity Trust Co. v. Commissioner, supra, there was no suggestion that the trust lacked sufficient assets to pay the liability and the court indicated that this was to be "collected from the trust estate." 141 F.2d at page 57. In Fletcher Trust Co. v. Commissioner, supra, the court answered petitioner's contention that its holding would impose undue hardship on fiduciaries by saying, 141 F.2d at page 40, that the trustee "could not be liable in any event in excess of the assets or estate of such trust." Neither is Springfield National Bank, 4 CCH Tax Ct.Mem.Dec.No.14440 (1945) to the contrary if properly interpreted. After imposing transferee liability on a trustee, the Tax Court referred to the trustee's objection that the trust had "no available property out of which to satisfy the tax claim." It said that this was "directed rather to the mechanics of collection than to the legal principles involved. No question is raised as to the adequacy of value of the transferred property." There was no intimation that the trustee might be held personally liable.

We conclude then that it was proper for the Tax Court to enter a judgment against the petitioner as trustee of the Jacqueline trust under § 1026(b), but that, subject to a qualification set forth below, the judgment should be modified to make clear that it is satisfiable only

out of the fund in the trust when the notice of deficiency was served. This fund is not limited to assets remaining out of the 1945 transfer; the value of such assets when transferred, to wit, $82,000, was a ceiling on the liability under § 1009, but within that ceiling the liability may be "collected" from any assets in "the estate." The record leaves us in doubt as to what these were. We know that, prior to the notice of deficiency, the trustees had paid Samuel the $82,000 transferred by Jacob in 1945—$50,000 on April 19, 1945, $25,-000 on August 26, 1947 and $7,000 on July 26, 1950; but we do not know what has happened to the $32,097.60 proceeds of life insurance which Jacob made payable to the trust or whether the trust has an enforceable claim against Samuel's estate for the $82,000 paid to him.

■■ The qualification relates to Rev. Stat. § 3467, 31 U.S.C.A. § 192, providing that:

"Every executor, administrator, or assignee, or other person, who pays, in whole or in part, any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate to the extent of such payments for the debts so due to the United States, or for so much thereof as may remain due and unpaid."

Courts have departed from a literal interpretation of this statute in holding that a fiduciary may be liable for a distribution of funds that is not, strictly speaking, the payment of a debt. E. g., United States v. Munroe, D.C.W.D.Pa. 1946, 65 F.Supp. 213. However, it has long been held that a fiduciary is liable only if it had notice of the claim of the United States before making the distribution. E. g., United States v. Clark, C.C.D.N.Y.1826, 25 Fed.Cas. pp. 447, 451, No. 14,807. Clearly petitioner would be

personally liable, whether under the statute or under § 1026(b), as regards any distribution made out of trust assets after May 25, 1951, when the notice of deficiency was served. And she may also be so liable as to distributions made before then if at the time she had actual notice of the government's intention to hold the trust liable as transferee for the gift tax and penalties on the 1945 gifts to Blossom Ost. See, e. g., Irving Trust Co., 1937, 36 B.T.A. 146, 148. The facts with respect to this may be developed on remand. The notice of deficiency was adequate to raise the issue of Estelle's personal liability under Rev. Stat., § 3467, for any "debts due the United States" from the trust estate. Estate of Henry Wilson, 1943, 2 T.C. 1059, 1088–1089.

■ The final issue is the Commissioner's claim that petitioner is liable as a transferee "in equity" because of her receipt of the following payments from the decedent when he was insolvent: (1) bonds of the value of $13,266.49, endorsed by the decedent to "Estelle Want and Samuel Want, Legal Guardians of Jacqueline Want, a minor," (2) that portion of Jacob's funds transferred by the petitioner to her own account in 1946 for safekeeping from Mrs. Ost which she paid out to creditors after his death, and (3) that portion of the premiums on life-insurance policies payable to the Jacqueline trust that was paid by the decedent in fraud of creditors, see Commissioner of Internal Revenue v. Stern, 1958, 357 U.S. 39, 45–46, 78 S.Ct. 1047, 2 L.Ed.2d 1126. We do not think this argument is open to the Commissioner. The notice of deficiency and the Commissioner's answer made it plain that transferee liability was asserted only by virtue of the 1945 and 1946 gifts to the trust. If the pleadings left any doubt that this was the sole issue raised, the doubt would be removed by the opening statement of the Commissioner's counsel which we quote in the margin.[3]

3. "The Respondent's position is that, since the gift taxes and penalties of Jacob A. Want have not been paid for the years 1945 and 1946, and since the value of

We therefore do not need to consider other criticisms of the Commissioner's contentions made by petitioner.

The judgment of the Tax Court as to 1945 is modified, the judgment as to 1946 is reversed, and the case is remanded to the Tax Court for further proceedings with respect to 1945 consistent with this opinion.

the assets received as gifts by the trustees of the Jacqueline Trust during those years exceed the amount of the taxes and penalties here in controversy; the trustees are liable at law for the aforementioned deficiencies in gift taxes and penalties of Jacob A. Want for the years 1945 and 1946."