KENNETH LEIGH, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10951–76.      Filed September 17, 1979.

*Anthony M. Vienna,* for the petitioner.
*Kenneth G. Gordon,* for the respondent.

DRENNEN, *Judge:* Respondent determined that petitioner in his capacity as fiduciary of the Estate of Charles W. Cooper, deceased, is personally liable for the undischarged estate tax owed by the estate in the amount of $27,061.

Due to a concession by respondent,[1] the only issue presented for our resolution is whether petitioner can be held personally

---

[1]Originally respondent determined that petitioner was liable for additions to tax pursuant to sec. 6651(a), I.R.C. 1954; however, respondent has stipulated that sec. 6651(a) is not applicable.

liable in his capacity as administrator of the Estate of Charles W. Cooper, under R.S. sec. 3467 (1878), 31 U.S.C. sec. 192 (1970 ed.).

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts together with the exhibits attached thereto are incorporated herein by reference.

Petitioner Kenneth Leigh is an individual who, at the time of filing his petition in this case, resided in Los Angeles, Calif.

On July 22, 1969, Charles W. Cooper (hereinafter decedent) died intestate. On July 24, 1969, Simon Shankin (hereinafter Shankin) was appointed special administrator of the Estate of Charles W. Cooper, deceased (hereinafter estate).

For 8 years prior to decedent's death, petitioner was employed by decedent's corporation, Charles W. Cooper, Inc., a dress manufacturer. Petitioner served the corporation as production manager, and in this capacity was involved in every aspect of the decedent's business, with the exception of the sales and bookkeeping departments.

Due to petitioner's familiarity with the business and the heirs' desire to continue the operation of decedent's business, petitioner was asked by Shankin and decedent's two brothers to replace Shankin as administrator of the estate. Petitioner accepted and on September 3, 1969, he was appointed administrator of the estate in place of Shankin.

Subsequent to becoming administrator, petitioner assumed the duties of president of Charles W. Cooper, Inc. In this capacity, he made all major decisions for the corporation including those involving financial matters.

Petitioner had no prior experience with the administration of any estate or the affairs of a deceased person, and, therefore, shortly after his appointment he retained Bernard W. Minsky (hereinafter Minsky) of the firm of Minsky & Garber to represent the estate. Petitioner had previously used this firm in personal legal matters and was entirely satisfied with its work.

Subsequent to the retention of Minsky, petitioner followed a course of blindly relying on Minsky's competence to administer the estate. When petitioner met with Minsky, it was usually for the purpose of signing checks or documents. It was petitioner's practice to attempt to read these documents before signing. If,

however, the documents were long and legalistic, petitioner would sign them without reading them. Petitioner never questioned Minsky as to the nature or contents of the documents he was signing; it was his feeling that Minsky was doing whatever was necessary to protect him and the heirs.

In addition to signing checks and estate documents, petitioner aided in the sale of decedent's house, a piece of property, and decedent's car. He also attended the probate proceedings with Minsky on at least two occasions.

On April 21, 1971, an estate tax return (Form 706) was filed with the District Director of Internal Revenue, Los Angeles, Calif. Petitioner was aware at this time that estates paid taxes, and had previously had discussions with Minsky about the general obligation of estates to pay tax, and about the tax liabilities of this estate.

On October 13, 1972, petitioner accompanied Minsky to State court where his "Petition for Order Settling Final Account of Administrator and for Distribution" was heard.

On October 16, 1972, an amended estate tax return was presented to petitioner by Minsky for his signature. The return listed as estate assets certain Totten Trusts[2] maintained by decedent which had not been included in the original estate tax return. Due to the inclusion of these trusts, the return reflected an additional estate tax due of $27,061. Appearing clearly on the first page of this return was the caption "Amended Estate Tax Return," the amount of tax paid with the original return, and the amount of $27,061, signifying the net estate tax payable. Petitioner looked at this page, but signed the return without questioning Minsky as to its significance.

Minsky forwarded the amended return to Special Procedures, Internal Revenue Service in Los Angeles, with a letter of transmittal dated October 17, 1972, which contained the following paragraph:

> You will note that the reason for the Amended Return is the joint tenancy accounts that were discovered very recently. As indicated to you heretofore, each of these accounts has approximately $3,000.00 in it for the payment of taxes. Please levy on these sums as soon as possible in that the estate does not have any more funds available for the payment of taxes.

---

[2] In this case, accounts were opened at various financial institutions by petitioner in his name as trustee for the benefit of various nephews of decedent.

On October 20, 1972, petitioner filed a proposed "Order Settling Final Account of Administrator and Decree of Distribution." The order recited that the assets in the possession of the estate on that date amounted to $177,043, of which $63,302 was in cash. The accounting did not reflect the additional estate tax either as having been paid or as a liability. This order was entered on October 24, 1972, and distribution of all the assets to the beneficiaries was made at that time.

On November 6, 1972, petitioner was discharged as administrator of the estate. Petitioner at no time had a beneficial interest in the estate, outside of the statutory fees he was awarded for serving as administrator. The order of October 24, 1972, allowed the administrator a statutory commission of $4,516 and an extraordinary commission of $1,500, based on allegations in the report that he had spent 81 hours rendering extraordinary services in administering the estate, including conferences with real estate brokers, bank executives, accountants, attorneys, and a revenue agent, concerning affairs of the estate.

Respondent, in his statutory notice of deficiency, determined a personal liability against petitioner in his fiduciary capacity as executor (administrator) of the estate for the unpaid estate tax of $27,061.

## OPINION

The ultimate issue for our resolution is whether petitioner is personally liable for the unpaid estate tax owing by the estate. Respondent, in determining that petitioner is liable for the tax in his own person, relies principally on section 2002, I.R.C. 1954,[3] which provides, "The tax imposed by this chapter shall be paid by the executor." Section 20.2002–1, Estate Tax Regs., makes it clear that this duty applies to the entire tax, regardless of the fact that the gross estate consists in part of property which does not come within the possession of the executor or administrator. The regulation also clarifies that this obligation is enforceable only in a fiduciary's representative capacity and not personally, unless section 3467 of the Revised Statutes of the United States, 31 U.S.C. sec. 192, also applies.[4]

---

[3]All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years at issue, unless otherwise specified.

[4]See also sec. 6901 which provides in part:

The personal liability of the fiduciary for estate tax is described in 31 U.S.C. sec. 192, which provides:

Every executor, administrator, or assignee, or other person, who pays, in whole or in part, any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate to the extent of such payments for the debts so due to the United States, or for so much thereof as may remain due and unpaid.

Section 192, 31 U.S.C., must be read in conjunction with R.S., sec. 3466 (1878), 31 U.S.C. sec. 191 (1970 ed.); *King v. United States*, 379 U.S. 329 (1964); *United States v. Lutz*, 295 F.2d 736 (5th Cir. 1961). Section 191, 31 U.S.C., establishes the priority of debts due to the United States and provides in part:

Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; * * *

See *New v. Commissioner*, 48 T.C. 671 (1967).

Though a literal reading of 31 U.S.C. sec. 191 and sec. 192 seems to impose strict liability on a fiduciary when he makes a distribution which leaves the estate with insufficient funds from which to pay a debt owing to the United States, courts have long departed from such a rigid interpretation. It has been long held that in order to render a fiduciary personally liable under 31 U.S.C. sec. 192, he must first be chargeable with knowledge or notice of the debt due to the United States, at a time when the estate had sufficient assets from which to pay this debt. *Want v. Commissioner*, 280 F.2d 777 (2d Cir. 1960); *Irving Trust Co. v. Commissioner*, 36 B.T.A. 146 (1937); *United States v. Vibradamp Corp.*, 257 F. Supp. 931 (S.D. Cal. 1966).

It is this knowing disregard of the debts due to the United

---

SEC. 6901. TRANSFERRED ASSETS.

(a) METHOD OF COLLECTION.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:

(1) INCOME, ESTATE AND GIFT TAXES.—

* * * * * * *

(B) FIDUCIARIES.—The liability of a fiduciary under section 3467 of the Revised Statutes (31 U.S.C. 192) in respect of the payment of any tax described in subparagraph (A) from the estate of the taxpayer, the decedent, or the donor, as the case may be.

States that imposes liability on the fiduciary, to the extent of the value of the assets distributed after knowledge of the debt was obtained. *United States v. Crocker*, 313 F.2d 946 (9th Cir. 1963).

There is no dispute that the unpaid estate tax of $27,061 constitutes a debt (see *Viles v. Commissioner*, 233 F.2d 376 (6th Cir. 1956)), nor that at a time when the estate had sufficient assets with which to pay this debt, there was a payment of a debt to another within the meaning of 31 U.S.C. sec. 192. Sec. 20.2002–1, Estate Tax Regs. See also *Champlin, Administrator v. Commissioner*, 6 T.C. 280, 285 (1946); *Wright v. Commissioner*, 28 B.T.A. 543 (1933); *Want v. Commissioner, supra; Schwartz v. Commissioner*, 560 F.2d 311, 319 (8th Cir. 1977), revg. T.C. Memo. 1975–267 on other grounds.[5] Therefore, the only issue before us is whether petitioner possessed knowledge or notice of the estate tax liability at the time of distribution of the estate.

The knowledge requirement of 31 U.S.C. sec. 192 may be satisfied by either actual knowledge of the liability or notice of such facts as would put a reasonably prudent person on inquiry as to the existence of the unpaid claim of the United States. *Irving Trust Co. v. Commissioner, supra; Livingston v. Becker*, 40 F.2d 673 (E.D. Mo. 1929).

It is petitioner's contention that due to his unfamiliarity with the estate tax return, and the nature of the estate tax in general, that he had no actual knowledge of the liability. Furthermore, petitioner argues that as a layman inexperienced with estate matters, his retention of competent counsel relieved him of the duty to inquire as to the proper disposition of the estate, and, therefore, he is not chargeable with knowledge of the facts that a reasonable inquiry would have produced. Although we sympathize with petitioner's plight, we cannot sustain either of petitioner's contentions.

On October 16, 1972, petitioner signed the amended estate tax return which gave rise to the liability in question. At that time

---

[5] Sec. 20.2002–1, Estate Tax Regs., provides in part:

"As used in said section, the word 'debt' includes a beneficiary's distributive share of an estate. Thus, if the executor pays a debt due by the decedent's estate or distributes any portion of the estate before all the estate tax is paid, he is personally liable, to the extent of the payment or distribution, for so much of the estate tax as remains due and unpaid."

Petitioner did not argue that the distribution of estate assets to the beneficiaries was not the payment of a debt of the estate within the meaning of the statute and the parties did not address this point. See, however, *Leuthesser v. Commissioner*, 18 T.C. 1112, 1128 (1952), which involved payment of corporate funds prior to payment of corporate tax, but which we find to be distinguishable.

he looked at the first page of the return where the caption "Amended Estate Tax Return" and the amount of the liability in question appeared clearly. Since petitioner, previous to this time, was aware of the general obligation of estates to pay taxes and in fact had signed the original estate tax return and had paid the tax shown to be due thereon, we believe that his signature on the amended return showing an outstanding tax liability is prima facie evidence that he had actual knowledge of the existence of the debt due to the United States within the meaning of section 192. See *United States v. Kaplan,* 74 F.2d 664 (2d Cir. 1935).

The main thrust of petitioner's argument seems to be, however, that even if he knew that there was additional tax due the Government, he assumed that Minsky would see that it was paid and he was therefore justified and reasonable in not inquiring further into whether the debt to the Government was paid. We disagree for the reasons hereafter discussed.

On brief petitioner cites us numerous cases,[6] which stand for the proposition that in some instances reliance on competence of counsel, without more, constitutes "reasonable cause" for the late filing of a return or for late payment of tax and will thus prevent the imposition of additions to tax under section 6651. He states that the reasoning of these cases should apply equally to the imposition of liability on the fiduciary, under 31 U.S.C. sec. 192. We do not find these cases controlling, as there is no "reasonable cause" requirement in 31 U.S.C. sec. 192.[7] See, however, *Estate of Duttenhofer v. Commissioner,* 49 T.C. 200 (1967), affd. per curiam 410 F.2d 302 (6th Cir. 1969), wherein this Court held that where the executors of an estate had reason to know that an estate tax return was required, reliance upon an

---

[6]*Miller v. United States,* 211 F. Supp 758 (D. Wyo. 1962); *In Re Fisk's Estate,* 203 F.2d 358 (6th Cir. 1953); *Clum v. United States,* 424 F. Supp. 2 (S.D. Ohio 1976).

[7]Additionally, assuming that the standard under sec. 6651 is controlling, the cases cited by petitioner are contrary to the Ninth Circuit's decision in *Ferrando v. United States,* 245 F.2d 582 (9th Cir. 1957). In that case, the Ninth Circuit, in finding a fiduciary liable for additions to tax under sec. 6651, stated:

"The filing of a tax return when due is a personal, nondelegable duty of the taxpayer; * * * it is no valid excuse for him to say the matter was put in charge of an employee or an accountant or attorney, no matter how trustworthy that person may be. [245 F.2d at 589.]"

We believe this reasoning would be applied to the payment of the tax shown to be due as well. Since appeal in the instant case would be to the Ninth Circuit, this standard must be given serious consideration. See also *Estate of Duttenhofer v. Commissioner,* 49 T.C. 200 (1967), affd. per curiam 410 F.2d 302 (6th Cir. 1969), wherein this Court quoted from and relied on the opinion in *Ferrando.*

attorney to file the return did not constitute reasonable cause under section 6651 for failure to file a timely return.

In this case, unlike in many of the cases cited by the parties, we do not have the question of whether petitioner was put on notice of the debt to the Government before he distributed the assets of the estate. About 1 week before the assets were distributed, petitioner signed, with the intent that it be filed, an amended return which clearly reflects on its face that additional tax was due the Government. There was no mystique about how the tax was computed—petitioner's own agents had computed it. Certainly petitioner had an obligation, independent of any reliance on his attorney, to look at the face of the return to see whether any additional tax was due, and he does not deny that he looked at the return before signing it. In fact, we think petitioner was definitely aware of the fact that the return was filed for the purpose of showing, and in fact did show, that additional tax was owing.[8] It may be that petitioner assumed that the tax would be paid from some other source, but section 192 required more of him than an honest belief that the Government would be paid; it imposed on him a duty to see that this was done. *King v. United States, supra* at 339–340. To hold that blind reliance on the competence of counsel relieves fiduciaries from the duty to inquire as to the actual payment of the tax would subvert the purpose of 31 U.S.C. sec. 192.

Section 192, 31 U.S.C., was founded on "motives of public policy in order to secure an adequate revenue to sustain the public burdens and discharge of public debts and should be liberally construed." *Viles v. Commissioner, supra* at 390; see *United States v. Crocker, supra* at 947.

Its purpose is to make those who have control and possession of the debtor's property responsible for seeing that the Government's priority is paid. *United States v. Westchester Fire Insurance Co.*, 478 F.2d 133 (2d Cir. 1973).

In view of its purpose, we are convinced that 31 U.S.C. section 192 requires more than a belief on the part of the executor-administrator that the debt to the Government would be paid. Once the fiduciary has actual knowledge that the debt to the

---

[8]Attorney Minsky did not testify. We have only petitioner's own rather equivocal and unsupported testimony regarding his knowledge of the facts. In sum, petitioner's testimony was simply that he left everything to Minsky. We do not know whether petitioner ever inquired of Minsky whether the tax was paid, but his testimony would indicate that he did not.

Government exists, or notice sufficient to put a reasonably prudent person on inquiry, the statute imposes a duty on the fiduciary, to the extent estate assets are available for the purpose, to see that it is paid. *King v. United States, supra.* The act of payment does not require legal expertise so that responsibility therefor can be delegated to an attorney. If the fiduciary does so, he assumes the risk of his attorney's actions and is chargeable with the knowledge of the facts that an inquiry would have revealed. Compare *New v. Commissioner, supra* at 679. Any other conclusion would be contrary to the purpose of 31 U.S.C. section 192.

Here a reasonable inquiry of Minsky should have revealed that the tax had not in fact been paid. That petitioner apparently chose not to make this inquiry does not relieve him from liability. We hold for respondent on this issue.

Because of respondent's concession,

*Decision will be entered under Rule 155.*