113 T.C. No. 31

UNITED STATES TAX COURT

WILLIAM D. LITTLE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24598-97.                    Filed December 29, 1999.

P was the personal representative of D's estate.
During administration of the estate, P received
information indicating possible income tax liabilities
of the estate.  P gave this information to the estate's
lawyer, who erroneously and repeatedly advised P that
the estate had no tax liabilities and advised P to make
disbursements and distributions.  P, acting in good
faith, followed this advice and eventually closed the
estate without paying the estate's income tax
liabilities.  R determined that P is liable for the
estate's unpaid income tax liabilities under 31 U.S.C.
sec. 3713(b) (1994), which generally imposes personal
liability on a fiduciary who pays others before paying
claims of the United States.  Liability under 31 U.S.C.
sec. 3713(b) has been judicially limited to situations
where a fiduciary knowingly disregards debts due to the
United States.

> Held: A fiduciary who reasonably and in good faith relies on an attorney's legal advice that there are no debts due to the United States before paying other claims has not knowingly disregarded debts of the United States. P is not liable for the income tax liabilities of the estate under 31 U.S.C. sec. 3713(b).

Michael M. Sayers, Michael W. Newport, and Brian K. Rull, for petitioner.

Robert J. Burbank, for respondent.

RUWE, Judge: Respondent determined that petitioner, in his capacity as a fiduciary of the estate of Jerry J. Calton, is personally liable under 31 U.S.C. section 3713(b) (1994) for the estate's unpaid income tax liabilities in the amount of $63,734.53, plus interest[1]. The amounts of the unpaid income tax liabilities of the estate are not in dispute.

Petitioner acknowledges that he permitted all the estate's assets to be paid out to creditors and beneficiaries before the estate's income tax liabilities had been paid. Petitioner disputes personal liability for these income tax liabilities on the ground that he did not have knowledge of the estate's unpaid taxes prior to disbursing the estate's assets.

_____

[1]The income tax liabilities of the estate are as follows:

| Year | Tax | Additions to Tax I.R.C. sec. 6651 |
|------|-----|-----------------------------------|
| 1989 | $4,658.50 | $2,071.03 |
| 1990 | 41,080.00 | 15,815.80 |
| 1991 | 52.00 | 57.20 |

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts is incorporated herein by this reference. Petitioner resided in St. Louis, Missouri, at the time he filed his petition.

Jerry J. Calton (decedent) died intestate on October 1, 1989. Petitioner and decedent had been personal friends. Upon being told of decedent's death, petitioner contacted Attorney Michael Cady, who advised him to identify decedent's body and suggested that petitioner act as personal representative. Since decedent had no close family members, and out of respect for decedent, who had been his personal friend, petitioner agreed to act as personal representative. Petitioner is not a college graduate and has had no prior experience in the administration of an estate. Petitioner was neither related to nor an heir of decedent.

Petitioner was appointed by the Probate Court of the City of St. Louis to be personal representative of the estate on October 27, 1989. On the advice of Mr. Cady, the estate engaged the services of Roger Lahr, an attorney licenced in Missouri, to

provide legal services regarding the administration of the estate.

From November 2, 1989, to January 14, 1990, debts of the estate in the total amount of $11,748.52 were paid by the estate. These debts did not have priority over claims of the United States. During the period from June 13 to October 22, 1990, additional nonpriority claims in the total amount of $5,460.51 were paid by the estate. From February 22 to May 24, 1991, the estate paid additional nonpriority claims of $8,830.30. Petitioner made a distribution from the estate to beneficiaries in the aggregate amount of $186,666.64 on June 6, 1991. On November 9, 1991, petitioner made a second distribution to beneficiaries in the aggregate amount of $35,000. On March 22, 1992, petitioner made a further distribution to beneficiaries also in the aggregate amount of $35,000. From November 1, 1989, until August 25, 1995, the estate made various disbursements totaling $48,732.02 to satisfy obligations that had priority over the claims of the United States. Petitioner disbursed a total of $139.89 to the Internal Revenue Service in response to a notice from respondent regarding an adjustment to decedent's 1988 income tax year. The total of all disbursements and distributions by the estate was $331,577.88. All the disbursements and

distributions from the estate were made on the advice of Mr. Lahr. Petitioner and Mr. Lahr had no actual knowledge of the estate's income tax liabilities at the time these disbursements and distributions were made.[2]

In January 1990, petitioner, in his capacity as personal representative of the estate, received Forms W-2 and Forms 1099 for decedent which indicated that decedent had income in 1989. In January 1991, petitioner also received Forms 1099 indicating

---

[2]Both petitioner and Mr. Lahr were credible when they testified to their ignorance of the tax liabilities in question. Indeed, respondent had no objection to petitioner's requested findings of fact, which stated:

Mr. Lahr was unaware of and ignorant of the debts due the Government at the time distributions were made to beneficiaries.

Petitioner was unaware of and ignorant of the debts due the Government at the time distributions were made to beneficiaries.

income of the estate in 1990.[3]  Petitioner timely forwarded these forms to Mr. Lahr, who repeatedly advised petitioner that, because of the size of the estate, no taxes were due.

In February 1992, respondent's Kansas City Service Center mailed a letter addressed to decedent proposing an income tax liability for 1989.  In February 1993, the Kansas City Service Center sent a notice of deficiency for 1989 that was addressed to decedent.  A form letter proposing an income tax liability for 1990 was mailed addressed to decedent on March 1, 1993.  On June 7, 1993, a notice of deficiency for 1990 was mailed addressed to

[3]In petitioner's capacity as personal representative of the estate, he received the following Forms W-2 and Forms 1099 for taxable years 1989 and 1990:

| Documents/Forms Received Jan. 1990 | Payor | Amount |
|---|---|---|
| Form W-2 | Federal Reserve Bank | $54,137 |
| Form W-2P | Boatman's Nat. Bank | 3,040 |
| Form 1099-G | Missouri Dept. of Revenue | 647 |
| Form 1099-INT | Boatman's Nat. Bank | 237 |
| Form 1099-INT | United Missouri Bank | 76 |
| Form 1099-R | Thrift Plan for Employees | 5,000 |
| Form 1099-R | Boatman's Bank | 2,055 |
| Form 1099-R | Boatman's Bank | 6,611 |
| Form 1099-R | Boatman's Bank | 2,117 |
| Form 1099-R | Boatman's Bank | 2,309 |
| Form 1099-R | Boatman's Bank | 3,103 |

| Documents/Forms Received Jan. 1991 | Payor | Amount |
|---|---|---|
| Form 1099-R | Thrift Plan for Employees | 96,485 |
| Form 1099-R | Retirement Plan, Federal | 56,000 |
| Form 1099-INT | United Missouri Bank | 2,072 |
| Form 1099-INT | United Missouri Bank | 1,991 |
| Form 1099-INT | United Missouri Bank | 1,990 |
| Form 1099-INT | United Missouri Bank | 3,535 |
| Form 1099-INT | United Missouri Bank | 3,347 |
| Form 1099-INT | United Missouri Bank | 3,531 |

decedent. These letters and notices were sent to petitioner's address, and petitioner received them. When petitioner received these items, he gave them to Mr. Lahr, who continued to advise petitioner that the estate was not liable for any Federal taxes.

Prior to closing the estate, in approximately May 1993, Mr. Lahr engaged the services of Norman Dilg, a certified public accountant, to review the administration of the estate. Upon review of the estate records, Mr. Dilg discovered that certain income tax returns had not been prepared and filed for decedent and the estate. Mr. Dilg reconstructed the available financial information and prepared and filed income tax returns in September 1993 for decedent for the year 1989 and for the estate for the years 1989, 1990, and 1991. Each of these returns reflected an unpaid balance due. No payments accompanied the returns.[4]

Mr. Lahr and petitioner became aware of the estate's unpaid income tax liabilities for 1989, 1990, and 1991 when Mr. Dilg informed them, sometime after May 1993 and before the returns were filed in September 1993. The only disbursements made after

---

[4]The returns filed for the estate showed the following unpaid taxes:

| 1989 | $4,654 |
| 1990 | 41,080 |
| 1991 | 52 |

The 1989 return for decedent showed an unpaid tax of $2,798.

petitioner became aware of the estate's income tax liabilities were to pay debts that had priority over those due to the United States.

In November 1993, petitioner submitted a Form 656, Offer in Compromise, to respondent. The offer concerned both decedent's and the estate's income tax liabilities and was accompanied by a check drawn on the estate's checking account in the amount of $17,586.07, which was the amount petitioner proposed to compromise the liabilities for decedent's 1989 income tax liability and the estate's income tax liabilities for 1989, 1990, and 1991. The Form 656 contained the following statement: "This offer in compromise of $17,586.07 represents the remaining value of the estate. There are no future sources of funds available." Respondent did not accept the Offer in Compromise. Several months later, respondent returned the Offer in Compromise and the uncashed check without any explanation.

After petitioner informed Mr. Lahr and Mr. Dilg of the returned offer and the uncashed check, they had a series of meetings and conversations with representatives of respondent, including a meeting with supervisory personnel of respondent. As a result of these conversations and meetings, Mr. Lahr and Mr. Dilg believed they had negotiated a final resolution with respondent. Mr. Dilg and Mr. Lahr informed petitioner that the matter had been resolved with respondent, resulting in the case

being closed. Petitioner was then advised by Mr. Lahr that there was no tax liability to be paid by the estate and that it was appropriate to pay out the remaining funds in the estate and to close the probate case. After receiving Mr. Dilg's and Mr. Lahr's advice, petitioner used the remaining assets of the estate to pay priority claims against the estate, and the estate was closed. In October 1995, a Statement of Account and Proposed Final Distribution, signed by petitioner and Mr. Lahr, was filed in the Probate Court of the Circuit Court, State of Missouri, which showed that all assets of the estate had been distributed and stated: "All claims, expenses of administration and taxes have been paid in full."

On September 23, 1997, respondent determined that petitioner was liable for income taxes and additions to tax due from the estate and mailed a notice of liability to petitioner.

OPINION

Respondent argues that under 31 U.S.C. section 3713(b), petitioner is personally liable for the estate's unpaid income tax liabilities. Title 31 U.S.C. section 3713 provides:

Section 3713. Priority of Government claims

    (a)(1) A claim of the United States Government shall be paid first when–

        *     *     *     *     *     *     *

        (B) the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor.

* * * * * * *

  (b) A representative of a person or an estate
* * * paying any part of a debt of the person or estate
before paying a claim of the Government is liable to
the extent of the payment for unpaid claims of the
Government.

This section appears to impose strict liability on a

fiduciary who makes a disbursement which leaves the estate with

insufficient funds with which to pay a debt owed to the United

States.  However, courts have long departed from such a rigid

interpretation.  "[I]t has long been held that a fiduciary is

liable only if it had notice of the claim of the United States

before making the distribution."  Want v. Commissioner, 280 F.2d

777, 783 (2d Cir. 1960); see also Leigh v. Commissioner, 72 T.C.

1105, 1109 (1979).  Whether the fiduciary had notice is

determined by whether the executor knew or was chargeable with

knowledge of the debt.  "The knowledge requirement of 31 U.S.C.

sec. 192 [now 31 U.S.C. sec. 3713] may be satisfied by either

actual knowledge of the liability or notice of such facts as

would put a reasonably prudent person on inquiry as to the

existence of the unpaid claim of the United States."  Leigh v.

Commissioner, supra at 1110 (citing Irving Trust Co. v.

Commissioner, 36 B.T.A. 146 (1937); Livingston v. Becker, 40 F.2d

673 (E.D. Mo. 1929)).  To be chargeable with knowledge of such a

debt, the executor must be in possession of such facts as to "put

him on inquiry."  New v. Commissioner, 48 T.C. 671, 676 (1967).

"It is this knowing disregard of the debts due to the United States that imposes liability on the fiduciary". Leigh v. Commissioner, supra at 1109-1110 (citing United States v. Crocker, 313 F.2d 946 (9th Cir. 1963)).

It is clear that petitioner had no actual knowledge of the estate's income tax liabilities at the time that he made disbursements and distributions from the estate. However, respondent argues that petitioner's receipt of Forms W-2 and 1099 and subsequent notices would have put a reasonably prudent person in petitioner's position on inquiry as to the existence of the debts due to the United States for unpaid income taxes.

We agree that the receipt of the tax information forms in January 1990 and 1991 was sufficient to put petitioner on inquiry. However, petitioner, having been put on inquiry, acted in a prudent and reasonable manner consistent with his fiduciary duties. Petitioner forwarded the forms to the estate's attorney, Mr. Lahr, and sought his advice. Mr. Lahr informed petitioner that because of the estate's size, the estate had no income tax liabilities. Mr. Lahr's legal advice was wrong.

Petitioner continued to receive the same advice from Mr. Lahr after giving him other notices from respondent that indicated there might be unpaid income taxes for which the estate might be liable. It was not until the summer of 1993 when Mr. Dilg was brought in and prepared and filed delinquent returns

that the tax liabilities in issue were discovered by Mr. Lahr. But almost all the estate's assets had already been distributed by then. As a result, on November 30, 1993, petitioner submitted an Offer in Compromise and sent a check for $17,586.07, the balance of the estate's assets, to respondent. The offer was not accepted, and several months later respondent returned the check to petitioner without explanation. Petitioner immediately informed Mr. Lahr. Thereafter, Mr. Lahr and Mr. Dilg met with representatives of respondent and erroneously concluded that respondent would drop the tax claims against the estate. They informed petitioner of this, and Mr. Lahr advised petitioner to make the final disbursements and to close the estate. Relying on the advice of the estate's attorney and the certified public accountant, petitioner closed the estate.

A fiduciary who knows of a debt due to the United States cannot delegate his responsibility to pay such a debt. The act of payment requires no legal expertise. If a fiduciary delegates to an attorney responsibility to make payment, he assumes the responsibility for the attorney's actions. Under such circumstances, failure to pay a debt due to the United States gives rise to personal liability under 31 U.S.C. section 3713(b). See Leigh v. Commissioner, supra at 1112-1113. The question presented here is different; the question is whether petitioner had the requisite knowledge at the time that he was disbursing

funds to have knowingly disregarded debts due to the United States.  It is this <u>knowing disregard</u> of the debts due to the United States that gives rise to liability under 31 U.S.C. section 3713(b).  See <u>Leigh v. Commissioner</u>, <u>supra</u> at 1109-1110.

No cases involving 31 U.S.C. section 3713(b) have been brought to our attention where the fiduciary was put on notice of possible debts due to the United States, made reasonable inquiry of legal counsel, and then relied in good faith on erroneous legal advice that there were no such debts. Respondent relies on <u>New v. Commissioner</u>, <u>supra</u> at 679, where we stated:

> If a fiduciary is put on inquiry, the fact that he inquires wrongly or haphazardly is not enough and is no defense.  To absolve petitioner because his inquiry turned out to be inadequate would be to reward the careless fiduciary and to put a premium on rapid cursory investigations.  Once a fiduciary is put on notice sufficient to put a reasonably prudent person on inquiry, he thereafter pursues a unilateral inquiry at his peril.  Any other conclusion would make the fiduciary the final arbiter of what the estate owed in tax, a result entirely nullifying all effect of 31 U.S.C. sec. 192.

The situation described in the above quotation is clearly different from the situation in the instant case.  The actual facts in <u>New</u> are also distinguishable in that the fiduciary in that case was himself an attorney with experience in the administration of estates, and his unilateral inquiries regarding tax liabilities were found to be severely flawed.

Here, petitioner had no prior experience with the administration of estates when he was put on notice of potential

income tax liabilities of the estate.  Had he determined on his own that there were no tax liabilities or simply ignored this notice and made no further inquiry, he would probably be chargeable with notice of the tax liabilities.  However, petitioner did not ignore the information about potential tax liabilities.  Petitioner recognized that he did not have the knowledge or experience to determine whether the estate owed tax.  He therefore gave the information to the estate's licensed attorney, who had been retained to advise petitioner in the administration of the estate, and asked for advice.  Petitioner's inquiry was neither haphazard nor careless; rather it was the prudent and reasonable thing to do.  Unfortunately, the attorney came up with the wrong advice when he repeatedly told petitioner that there was no tax liability.  But what more should petitioner have done?  As the Supreme Court observed in United States v. Boyle, 469 U.S. 241, 251 (1985):

> When an accountant or attorney advises a taxpayer on a
> matter of tax law, such as whether a liability exists,
> it is reasonable for the taxpayer to rely on that
> advice.  Most taxpayers are not competent to discern
> error in the substantive advice of an accountant or
> attorney.  To require the taxpayer to challenge the
> attorney, to seek a "second opinion," or to try to
> monitor counsel on the provisions of the Code himself
> would nullify the very purpose of seeking the advice of
> a presumed expert in the first place.  See Haywood
> Lumber, [178 F.2d] supra, at 771.  "Ordinary business
> care and prudence" do not demand such actions.

Regardless of the culpability of the estate's attorney in failing to ascertain the estate's income tax liabilities, the

facts before us support a conclusion that petitioner fulfilled his duty of inquiry and was reasonable and acted in good faith in following the attorney's advice that no tax was due from the estate.  In the unique circumstances of this case, we find that petitioner lacked knowledge of the estate's income tax liabilities at the time he made payments from the estate's assets and did not knowingly disregard debts due to the United States. We therefore hold that petitioner is not liable under 31 U.S.C. section 3713(b) for the unpaid tax liabilities in question.

<u>Decision will be entered for petitioner</u>.